### SAM STROUBE v. THE STATE.

No. 1614.   Decided May 17, 1899.

**1.   Counterfeiting—Jurisdiction of State Courts.**

Congress has expressly reserved and recognized the jurisdiction of State courts over counterfeiting.

**2.   Confession—Bill of Exceptions.**

A bill of exceptions to the introduction of defendant's confession must not only show that the confession was offered, but that it was admitted and went to the jury as evidence, and must set out the confession as introduced.

**3.   Counterfeiting—Charge.**

On a trial for counterfeiting silver half dollars, where there was no issue made by the evidence as to the fact that the counterfeits contained a less proportion of silver than the true coin attempted to be imitated, a charge that "he is guilty of counterfeiting who makes, in the semblance of true silver coin, any coin of whatever denomination, having in its composition a less proportion of the precious metal of which the true coin intended to be imitated is composed than is contained in such true coin, with the intent that the same shall be passed," etc., is sufficient where there is also a correct application of the law to the facts.

**4.   Same—Venue.**

Under provisions or article 226, Code of Criminal Procedure, a prosecution for counterfeiting may be maintained in any county where the coins were passed.

APPEAL from the District Court of Llano. Tried below before Hon. W. M. ALLISON.

Appeal from a conviction for counterfeiting; penalty, five years imprisonment in the penitentiary.

A motion was made by defendant to quash the indictment upon the ground that the United States courts have exclusive jurisdiction over the offense of counterfeiting; and also a motion in arrest of judgment upon the same ground. Both motions were overruled.

We take the following statement from the brief of counsel for appellant, to wit:

About the 3d day of December, 1898, Deputy Sheriff F. H. Hargon arrested defendant on suspicion that he was making counterfeit money. The arrest was made about three o'clock in the morning, it being quite cold at that time. Defendant was taken to the sheriff's office in the courthouse at once, and being very cold, asked for whisky and was furnished some, of which he took a drink. Deputy Sheriff Hargon then told him the best thing he could do would be to make a clean breast of

the whole matter and tell all he knew about this counterfeiting business, that there was no chance for him to beat it anyway, and if he would tell what he knew on the others connected with it, it might be easier or lighter on him. Said officer told him that he could not make him any promises, but that it was his opinion that if he, Stroube, would tell all he knew about it, it would be better for him. He made a statement about the matter that night. At half-past 4 o'clock the officers started to jail with him, and on the way to jail he said if they would get him some more whisky he would tell all he knew, and a half pint more was procured. They all took a drink and went back to the courthouse, but defendant got mad at one of the party and refused to talk. He promised to tell Deputy Hargon all about it in the morning, and they gave him the remaining whisky and put him in jail. Deputy Hargon testified that, in connection with the other matters he stated to him the night before, he told him "that whatever he said about the matter could be used as evidence against him." At half-past 8 in the morning Deputy Hargon took him out of the jail and conveyed him to the sheriff's office, and again told him "that whatever he might say would be used as evidence against him." He then reiterated all he had said the night before. Deputy Hargon showed him three counterfeit half dollars and asked him if he made them. He said no; his were a great deal better imitation than those. Said he had made about a peck, and turned them over to John Tow. Witness said he did not say in so many words that he turned them over to John Tow, but said: "You know how that would be, Frank; I was to pass up and down the street, and pass by John Tow, and if he had any good money for me he was to hand it to me,—a dollar or half dollar, or whatever it might be, and I was to put it in my pocket and go on and say nothing." He said he had never got a cent from Tow; that that was what he hated; Tow got all the money and he was in this trouble. Defendant was not drunk at any time while talking to witness. When witness went to jail after him in the morning defendant's nose was bruised and bleeding, and he told witness he had fallen down and bruised it.

J. H. McLean and John C. Oatman, for appellant, cited U. S. Const., art. 1, sec. 8, clause 6; Fox v. Ohio, 5 How. (U. S.), 410; United States v. Morrigold, 9 How. (U. S.), 568; Moore v. Illinois, 14 How. (U. S.), 20, 21; State v. Brown, 2 Ore., 221; 4 Am. and Eng. Enc. of Law, 1 ed., 334; Martin v. State, 18 Texas Crim. App., 224.

Robt. A. John, Assistant Attorney-General, for the State, as to jurisdiction of State courts in cases of counterfeiting, cited Fox v. State, 5 How. (U. S.), 434; Ex Parte Geisler, 50 Fed. Rep., 411; Antonio v. State, 3 Wheeler Crim. Cas., 511; State v. Tutt, 1 Bailey (S. C.), 44; White v. Com., 4 Binney (Pa.), 418; 7 Am. and Eng. Enc. of Law, 879; Martin v. State, 18 Texas Crim. App., 224.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of the offense of counterfeiting. He moved in arrest of judgment, because, under the Constitution of the United States the Federal courts alone have jurisdiction of this offense. The law has been so long settled contrary to this contention that we deem it unnecessary to discuss this question. Congress has expressly reserved and recognized the jurisdiction of State courts over counterfeiting. Ex Parte Geisler, 50 Fed. Rep., 411; Martin v. State, 18 Texas Crim. App., 224; 7 Am. and Eng. Enc. of Law, pp. 878, 879, and especially note 2 on page 879. In State v. Brown, 2 Oregon, 221, it was held that authority for punishing the counterfeiting of coin rested exclusively in the Federal courts; but this decision has never been followed. It was also so held in Mattison v. State, 3 Missouri, 421, but this was overruled in Truman's Case, 44 Missouri, 181.

The first bill of exceptions recites that the State offered appellant's confession in evidence. Several objections were urged, but the bill fails to show that the confession was in fact admitted in evidence. It does recite that the confession was offered, but this is not sufficient. The bill must show, not only that the confession was offered, but that it was admitted, and must set out the confession as introduced. Burke v. State, 25 Texas Crim. App., 173.

Appellant requested the court to charge the jury that one of the main ingredients of this offense was that the articles made in the semblance of silver half dollars contained a less proportion of the precious metal of which the true coin intended to be counterfeited is composed than is contained in such true coin; and, before he could be found guilty, the evidence must show beyond a reasonable doubt that the articles made, if any were made in imitation of the silver half dollars, contained a less amount of silver than the coin attempted to be imitated, and, if that was not shown, appellant must be acquitted. Under a particular state of case such a charge might be applicable. The court did charge the jury that "he is guilty of counterfeiting who makes, in the semblance of true silver coin, any coin, of whatever denomination, having in its composition a less proportion of the precious metal of which the true coin intended to be imitated is composed than is contained in such true coin, with the intent that the same should be passed, in this State or elsewhere." He then applied this law to the facts, and instructed the jury properly in regard to this matter. There was no issue, as we understand the evidence, upon this question.

Exception was also reserved to the charge in several respects, alleging the failure to charge the law applicable to the case. They pertain to the venue, etc. The evidence shows, beyond any question, venue in Llano County. The circumstances show with reasonable certainty that he made the counterfeit half dollars in the town of Llano, in Llano County. It further shows that he passed said counterfeit half dollars in said county, and, even if the evidence did not show that he did the counter-

feiting in said county, the fact that he passed the same in that county would authorize venue. This is so by statutory provision. See Code Crim. Proc., art. 226.

We find no error in the record authorizing a reversal of this case, and the judgment is affirmed.

*Affirmed.*