[Crim. No. 5171. In Bank. Dec. 15, 1953.]

In re CHARLES AUGUSTUS DIXON, on Habeas Corpus.

Franklin C. Stark, under appointment by Supreme Court, for Petitioner.

Edmund G. Brown, Attorney General, and Clarence A. Linn, Assistant Attorney General, for Respondent.

GIBSON, C. J.—After a trial before a jury in the superior court petitioner was convicted of a violation of section 480 of the Penal Code, which prohibits the making or possessing

of dies, plates or other apparatus used in counterfeiting.*
He was sentenced to San Quentin, where he is now imprisoned.
No appeal was taken from the judgment of conviction.

Petitioner seeks a writ of habeas corpus and contends, in
part, that real evidence used to convict him was obtained by
unlawful search and seizure and that his confession, which
was received in evidence, was obtained by coercion. In sup-
port of his contentions petitioner makes allegations to the
effect that police officers and federal secret service agents
illegally searched his home and seized evidence used against
him, that he was beaten and threatened, and that his confes-
sion was not made voluntarily. These allegations are contro-
verted by the return, which alleges that all the matters com-
plained of by petitioner were urged and considered at his
trial in the superior court.

In view of the fact that petitioner did not appeal we must
determine whether any of the matters urged by him may
nevertheless be appropriately considered in this proceeding.
The general rule is that habeas corpus cannot serve as
a substitute for an appeal, and, in the absence of special
circumstances constituting an excuse for failure to employ
that remedy, the writ will not lie where the claimed errors
could have been, but were not, raised upon a timely appeal
from a judgment of conviction. (*In re McInturff*, 37 Cal.2d
876, 880 [236 P.2d 574]; *In re Connor*, 16 Cal.2d 701, 705
[108 P.2d 10]; see *In re James*, 38 Cal.2d 302, 309 [240 P.2d
596]; *In re Manchester*, 33 Cal.2d 740, 742 [204 P.2d 881];
*In re Byrnes*, 26 Cal.2d 824, 827 [161 P.2d 376]; cf. *Brown
v. Allen*, 344 U.S. 443 [73 S.Ct. 397, 420-422, 97 L.Ed. 469].)
The only explanation given by petitioner for his failure to
appeal is that he lost the right because of his ignorance of
the law and because of a lack of funds necessary to order a
transcript of the record.

Petitioner's failure to appeal cannot be excused upon
the basis of his explanation. He was represented by counsel
during all stages of his trial from arraignment through pro-

---

*Section 480 of the Penal Code provides: "Every person who makes,
or knowingly has in his possession any die, plate, or any apparatus,
paper, metal, machine, or other thing whatever, made use of in counter-
feiting coin current in this state, or in counterfeiting gold-dust, gold or
silver bars, bullion, lumps, pieces, or nuggets, or in counterfeiting bank
notes or bills, is punishable by imprisonment in the state prison not less
than one nor more than fourteen years; and all such dies, plates, ap-
paratus, paper, metal, or machine, intended for the purpose aforesaid,
must be destroyed."

nouncement of judgment and sentence, and there is no showing that he did not have, or could not obtain, the aid of counsel during the time within which he could have taken an appeal. Although the application for habeas corpus was apparently prepared by petitioner without the aid of an attorney, he is now represented by counsel, who argued on his behalf at the hearing before this court. No claim has been made, however, that his failure to appeal was due to lack of opportunity to consult an attorney or that he was in any manner deprived of the right to the assistance of an attorney during the time within which he could have appealed from the conviction.

Petitioner has the burden in this proceeding of alleging and proving all facts upon which he relies to overturn the judgment and of giving a satisfactory reason for not resorting to his remedy of appeal. (See *In re Swain,* 34 Cal.2d 300, 304 [209 P.2d 793]; *In re Manchester,* 33 Cal.2d 740, 742 [204 P.2d 881]; *In re Connor,* 16 Cal.2d 701, 711 [108 P.2d 10].)

For all that appears petitioner may have refused the services of counsel, and, in the absence of allegations to the contrary, he is in no position to assert that he was ignorant of the law. His allegation as to lack of funds for a transcript raises a false issue and is entirely immaterial, since he would have been entitled to a transcript of the evidence at the expense of the state. (*People* v. *Smith,* 34 Cal.2d 449 [211 P.2d 561]; see 4 Cal.Jur.2d 262.)

We must consider whether, regardless of the lack of a satisfactory excuse for the failure to appeal, we may properly pass upon petitioner's claims relating to forced confession and unlawful search and seizure. Petitioner argues that a failure to appeal will not prevent a resort to habeas corpus when, as here, fundamental constitutional rights are involved. His contentions, however, depend entirely on his version of what occurred, and, as we shall see, there was ample evidence from which the trial court could have found that there was no violation of his rights. It is, of course, an established rule that habeas corpus may not be used instead of an appeal to review determinations of fact made upon conflicting evidence after a fair trial. (*In re Horowitz,* 33 Cal.2d 534, 546 [203 P.2d 513]; *In re Lindley,* 29 Cal.2d 709, 723 [177 P.2d 918].) Likewise, the writ is not available to correct errors or irregularities relating to ascertainment of the facts when such errors could and should have been raised by appeal. (*Cf. In re Lindley,* 29 Cal.2d 709, 722 [177 P.2d 918]; *In re Porterfield,* 28 Cal.2d 91, 99 [168 P.2d 706, 167 A.L.R. 675].)

The same principles should apply even though the alleged errors involving factual issues relate to an asserted denial of constitutional rights. (*Cf. Brown* v. *Allen,* 344 U.S. 443 [73 S.Ct. 397, 421-422, 97 L.Ed. 469].) It would obviously be improper to permit a collateral attack because of claimed errors in the determination of the facts after expiration of the time for appeal when evidence may have disappeared and witnesses may have become unavailable.

The clerk's and reporter's transcripts of the proceedings in the trial court have been made a part of the record herein, and we have examined them to ascertain whether the facts relating to petitioner's contentions were before that court and whether any error in connection therewith could have been raised on appeal. The record shows that the issues relating to the confession and the claimed unlawful search and seizure were argued during the trial, that the testimony on these matters was conflicting, and that the evidence would have supported a finding that there was no violation of petitioner's constitutional rights. According to the testimony and the inferences to be drawn therefrom, two police officers, who were looking for a Mr. Levitt, went to petitioner's apartment and rang the bell. They identified themselves as police officers when petitioner came to the door, and he invited them to enter. While one of them was talking to him, the other, standing in an inner doorway and looking into another room, observed some of the equipment assertedly used by petitioner for counterfeiting, including a ten dollar bill taped to a printing frame before a camera. The officers then arrested and handcuffed petitioner, the premises were searched and certain articles were seized. The·police officers telephoned United States secret service agents, and additional evidence was discovered after the federal agents arrived, but the record shows that such evidence was voluntarily disclosed to the agents by petitioner in response to their questions. The officers and agents denied that petitioner was beaten or threatened, and there was testimony that his confession was given freely and voluntarily and that no force was used upon him except for a slight scuffle when he was handcuffed.

█ It could be concluded from the evidence that the police officers lawfully entered the apartment and that they thereafter had reasonable cause for believing that petitioner had committed a felony. Hence they could arrest him without a warrant. (Pen. Code, § 836.) █ Thereafter it was proper for them, as an incident to a lawful arrest, to search

the premises and seize articles which they believed were being used by petitioner in the commission of the crime for which he was arrested. (*Harris* v. *United States*, 331 U.S. 145, 151 et seq. [67 S.Ct. 1098, 91 L.Ed. 1399]; see 79 C.J.S. 795-796.) Similarly, the action of the federal agents in taking possession of the additional evidence discovered after their arrival was proper in view of the showing that such evidence was willingly disclosed to them by petitioner. With regard to his confession, the testimony as to its voluntary character is clearly sufficient.

It is thus apparent from the record as a whole that the matters of which petitioner complains were before the trial court and that there was evidence which would have supported findings that there was no violation of his constitutional rights in connection with his confession or the search and seizure. Although difficult questions of law might be presented if the facts alleged by petitioner with respect to these matters were accepted, he is not entitled in this proceeding to a consideration of claims which are based upon his version of the conflicting evidence and which could have been, but were not, raised on appeal. Likewise, petitioner's contentions that irrelevant evidence was erroneously admitted at his trial and that the prosecution was guilty of misconduct clearly could have been dealt with upon a timely appeal from the judgment of conviction, and such matters are not reviewable in this proceeding. (*In re Manchester*, 33 Cal.2d 740, 743-744 [204 P.2d 881]; *In re Lindley*, 29 Cal.2d 709, 723-724 [177 P.2d 918].)

Finally, petitioner contends that section 480 of the Penal Code, under which he was convicted, is unconstitutional. This contention comes within a recognized exception to the general rule requiring resort to appeal as a prerequisite to the remedy of habeas corpus. The decisions involving this writ have uniformly passed upon the constitutionality of legislation and, in most instances, have done so as a matter of course without discussion of the propriety of the writ or the availability of an appeal. (See *In re Wells*, 35 Cal.2d 889, 892-895 [221 P.2d 947] [considering merits of contentions although noting that they could have been, but were not, presented on appeal]; *In re Porterfield*, 28 Cal.2d 91, 99 [168 P.2d 706, 167 A.L.R. 675]; *In re Herrera*, 23 Cal.2d 206, 208, 214 [143 P.2d 345] [no discussion]; *In re Bell*, 19 Cal.2d 488, 492-495 [122 P.2d 22]; *In re Sidebotham*, 12 Cal. 2d 434 [85 P.2d 453, 122 A.L.R. 496] [no discussion]; 13

Cal.Jur. 225-226; *cf. In re Leach,* 215 Cal. 536, 543-545, 547 [12 P.2d 3] [stating that it is well settled that constitutionality of a law may be raised on habeas corpus].)

Petitioner asserts that section 480 is void because, he argues, the United States Constitution gives Congress the sole power to punish the counterfeiting of federal currency. Section 8 of article I of the United States Constitution provides that "the Congress shall have power. . . . To coin money, regulate the value thereof, and of foreign coin. . . . To provide for the punishment of counterfeiting the securities and gold coin of the United States." ▉▉ A state, of course, is not precluded from acting with respect to a particular subject merely because power over that subject has been expressly granted to Congress by the Constitution, and it has been recognized that the same act may be made a crime by both state and federal governments. (*California* v. *Zook,* 336 U.S. 725, 731 [69 S.Ct. 841, 93 L.Ed. 1005] [regulation of interstate commerce]; *United States* v. *Lanza,* 260 U.S. 377, 381-384 [43 S.Ct. 141, 67 L.Ed. 314] [sale of intoxicating liquor]; *People* v. *Grosofsky,* 73 Cal.App.2d 15, 17 [165 P.2d 757]; see 15 Am.Jur. 68.) ▉▉ Although the cases are not entirely clear, the United States Supreme Court has indicated that, in the absence of federal legislation which occupies the field, state legislatures have authority to prohibit counterfeiting of federal money. (See *Sexton* v. *California,* 189 U.S. 319, 322-323 [23 S.Ct. 543, 47 L.Ed. 833]; *United States* v. *Arjona,* 120 U.S. 479, 487 [7 S.Ct. 628, 30 L.Ed. 728]; *cf. Fox* v. *State of Ohio,* 5 How. (46 U.S.) 410, 432 et seq. [12 L.Ed. 213].)

In California the case of *People* v. *White,* 34 Cal. 183, 186, sustained a conviction under a statute similar to section 480 of the Penal Code for knowingly procuring and possessing instruments used in counterfeiting United States gold coin. The court rejected an argument that the statute was contrary to the federal Constitution, stating that the United States Supreme Court had decided the matter adversely to the views advanced by the defendant's counsel. (See, also, *People* v. *McDonnell,* 80 Cal. 285 [22 P. 190, 13 Am.St.Rep. 159].) Other jurisdictions have reached the same conclusion on the ground that the states have concurrent power with the federal government unless Congress provides for exclusive federal control. (*Commonwealth* v. *Fuller,* 8 Met. (Mass.) 313, 314 et seq. [41 Am.Dec. 509]; *Harlan* v. *People,* 1 Doug. (Mich.) 207, 209-212; *Stroube* v. *State,* 40 Tex.Crim.Rep. 581 [51 S.W. 357, 358]; *Martin* v. *State,* 18 Tex.App. 224, 225.)

 There is no merit to petitioner's contention that the field was occupied by the enactment of chapter 25 of Title 18 of the United States Code which provides for the punishment of counterfeiting and related crimes. Whether Congress has occupied a particular field depends upon whether it intended to exclude state legislation. (*California v. Zook*, 336 U.S. 725, 728-733 [69 S.Ct. 841, 93 L.Ed. 1003].) Title 18, which relates to other federal crimes in addition to counterfeiting, expressly provides that "Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof." (U.S.C.A. § 3231.) Substantially identical provisions in former federal statutes have been held to expressly reserve the jurisdiction of the states to punish counterfeiting. (*Ex parte Geisler*, 50 F. 411; *People v. White*, 34 Cal. 183, 186; *Iowa v. McPherson*, 9 Iowa 53, 55; *People v. Fury*, 279 N.Y. 433 [18 N.E.2d 650, 651]; *Stroube v. State*, 40 Tex. Crim.Rep. 581 [51 S.W. 357, 358]; see *Sexton v. California*, 189 U.S. 319, 322 [23 S.Ct. 543, 47 L.Ed. 833]; *Nastasi v. Aderhold*, 201 Ga. 237 [39 S.E.2d 403, 405].)

The order to show cause is discharged, and the writ is denied.

Shenk, J., Edmonds, J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I dissent.

There can be no question but that the record discloses a flagrant violation of petitioner's constitutional rights. The majority opinion conveys the false impression that the officers went to petitioner's home looking for a Mr. Levitt and accidentally saw the counterfeiting material and equipment. It is there stated that petitioner *invited* the officers in and that the entry of the police officers was peaceful. This is refuted by the statement in respondent's brief that "In the instant case the officers had reason to believe that one Levitt had committed a felony and was in the premises. *They had a right to break and enter in an endeavor to apprehend Levitt.*" (Emphasis added.)

The majority opinion fails to give the complete factual background of this case. It fails to mention that at the instigation of the federal officers who made the search, petitioner was charged by a federal grand jury with the same crime as is here involved. Upon the trial, in the federal dis-

trict court, he moved to suppress the evidence which had been seized in violation of his constitutional rights; that motion was granted by Judge Dal M. Lemmon and it was ordered that "The evidence other than the written statement, the photographs taken by the officers and the written consent" be delivered to the defendant. The evidence so ordered to be delivered to petitioner was not delivered to him but to police officers of the city and county of San Francisco who used it to institute the criminal action in which he was convicted. This petition for a writ of habeas corpus stems from the judgment of conviction entered in the Superior Court of the City and County of San Francisco. The charge against petitioner in the federal court was dismissed.

As Judge Lemmon pointed out in his opinion, that any invitation by defendant to the officers was in submission to authority rather than an intelligent and voluntary waiver of his right of protection from illegal arrest or unreasonable search and seizure. (*Johnson* v. *United States*, 333 U.S. 10 [68 S.Ct. 367, 96 L.Ed. 436].) It is admitted by the prosecution that there was a scuffle when petitioner was handcuffed after asking if the officers had a search warrant. Petitioner's so-called voluntary oral consent to a search was given while he was handcuffed; his written consent to such a search was also given while he was handcuffed. For all practical purposes, aside from any force used by the officers, the entry by the officers and their search of petitioner's home was illegal and in violation of his constitutional rights. As Judge Lemmon stated, there was present coercion, both physical and psychological. Petitioner knew that incriminating evidence had been found; he was handcuffed when his consent to a thorough search was refused and later gave his consent. A consent given under such circumstances is not the consent which the law requires before a lawful search may be made. A forced consent is no consent at all. (*United States* v. *Baldocci*, 42 F.2d 567.)

In California, due to an unfortunate line of decisions, evidence illegally obtained is admissible in the courts. With these holding I have always been in disagreement. (See dissenting opinion in *People* v. *Rochin*, 101 Cal.App.2d 140, 143 [225 P.2d 1, 913]; reversed by United States Supreme Court, *Rochin* v. *California*, 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396].) I have always taken the position that the decisions of this court have given aid and comfort to so-called officers of the law who are so lacking

in respect for the constitutional provisions here involved that they ruthlessly violate them with impunity. To them the constitutional right of privacy does not exist, and they make an empty, hollow mockery out of the oath which they took to support the Constitution.

The Fourth Amendment to the Constitution of the United States provides that ''The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, *shall not be violated. . . .*'' (Emphasis added.) The same provision is found in the California Constitution, article I, section 19. The federal courts have refused to allow this right to be violated. I wish I could say the same thing for the courts of California. We are told by a majority of this court that the action of the federal agents in taking possession of additional evidence discovered after their arrival was proper *in view of the showing that such evidence was willingly disclosed to them by petitioner.* This is in conflict with the decision of Judge Lemmon who held that the evidence was illegally obtained and ordered it returned to defendant. His decision on this issue is final and should be res adjudicata. It is ignored by the majority. The evidence is uncontradicted—in fact it is admitted—that at the time the search was made petitioner was handcuffed. It would appear to me that one who is handcuffed is not in a position to do anything *willingly.* We are also told that evidence was *voluntarily* disclosed by petitioner. This so-called *voluntary* disclosure was also made *after* he was handcuffed. In view of the foregoing it is perfectly obvious that the search and seizure were unlawful.

As Mr. Justice Douglas said in *McDonald* v. *United States,* 335 U.S. 451 [69 S.Ct. 191, 93 L.Ed. 153]: ''We are not dealing with formalities. The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals. Power is a heady thing; and history shows that the police acting on their own cannot be trusted. And so the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the

home. *We cannot be true to that constitutional requirement* and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative." (Emphasis added.)

In this record I find no evidence that such an emergency existed as to excuse the procurement of a search warrant and Judge Lemmon so held. It is also my opinion that, under the fact presented here, to hold that petitioner "willingly" and "voluntarily" permitted the officers to search and seize evidence found in his home is a travesty upon the accepted meaning of those words.

The majority here disregards the mandate of both the federal and state Constitutions that the right of the people to be secure in their persons, houses, papers and effects shall not be violated, and sanctions the violation of these mandates on the ground of expediency.

It is indeed regrettable that the majority of this court has again seen fit to perpetuate a rule which permits peace officers to flout these constitutional mandates. This rule was first pronounced by this court in *People* v. *Mayen,* 188 Cal. 237 [205 P. 435, 24 A.L.R. 1383], which was followed by the cases of *People* v. *Gonzales,* 20 Cal.2d 165 [124 P.2d 44], and *People* v. *Kelley,* 22 Cal.2d 169 [137 P.2d 1]. Abuses which have been practiced under this rule have been declared by the Supreme Court of the United States to be of such gravity and so inhuman as to shock the conscience of mankind and that "this course of proceeding by agents of government to obtain evidence is bound to offend even hardened sensibilities." (See *Rochin* v. *California,* 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396].) While the reversal of this court by the Supreme Court of the United States in the Rochin case was not based upon the Fourth Amendment to the Constitution of the United States but upon the due process clauses of the Fifth and Fourteenth Amendments to that Constitution, it cannot be denied that had the courts of California followed the federal rule with respect to excluding evidence obtained as the result of an unlawful search and seizure, the Rochin case would never have occurred and this court would have escaped the censure implicit in the following statement in the Rochin case at page 174: "In deciding this case we do not heedlessly bring into question decisions in many States dealing with essentially different, even if related, problems. We therefore put to one

768

side cases which have arisen in the State courts through use of modern methods and devices for discovering wrongdoers and bringing them to book. It does not fairly represent these decisions to suggest that they legalize force so brutal and so offensive to human dignity in securing evidence from a suspect as is revealed by this record. Indeed the California Supreme Court has not sanctioned this mode of securing a conviction. It merely exercised its discretion to decline a review of the conviction. All the California judges who have expressed themselves in this case have condemned the conduct in the strongest language." It should be noted that the statement in the above excerpt that "the California Supreme Court has not sanctioned this mode of securing a conviction," is not a correct statement, as the Rochin case was before this court on a petition for hearing after decision by the District Court of Appeal, Second Appellate District, and that petition was denied by the vote of every member of this court except Justice Schauer and myself who wrote dissenting opinions to the order of denial. (See *People* v. *Rochin*, 101 Cal.App.2d 140, 143, 149 [225 P.2d 1, 913].)

It cannot be denied that it lies within the power of a majority of this court to change the rule which permitted and encouraged the shocking and inhuman conduct of peace officers depicted in the Rochin case and in the case at bar. The courts of last resort of many other states have seen fit to adopt and follow the federal rule relating to the admissibility of evidence obtained as the result of an unlawful search and seizure.

On December 6, 1950, the Supreme Court of Delaware, in the case of *Rickards* v. *State,* overruled two prior decisions of that court and adopted the federal rule with respect to the inadmissibility of evidence obtained as a result of an unlawful search and seizure; that is, search without a search warrant. The decision of the Supreme Court of Delaware is reported in 6 Terr. (Del.) 573 [77 A.2d 199]. In the course of its opinion in this case, the Supreme Court of Delaware stated:

"It would serve little purpose to catalog numerous decisions of State and Federal Courts discussing the rule. There is a direct conflict between the respective points of view; they are irreconcilable.

"Courts admitting such evidence, while recognizing the existence of the constitutional guarantees against unreasonable search and seizure and compulsory self-incrimination, nevertheless, hold that the protection of those guarantees does not

require evidence obtained in violation of them to be excluded. In answer to the argument that the guarantees have been violated by state officials, it is said that the state, itself, has committed no violation because it adopts as its acts only the legal acts of its officials, and that officials who illegally violate constitutional guarantees do so on their own initiative and not under the sponsorship of or for the benefit of the state. The remedy of the individual whose rights have been violated is stated to be a civil action against the official who has invaded his constitutional rights.

*"Courts following the Federal rule adopt the view that the efficient prosecution of criminals cannot justify a deliberate invasion of the right of the citizen to be made secure against the violation of specific constitutional guarantees, and that the suggested remedy of a civil action is as a practical matter no remedy at all. The Federal rule is a practical attempt to help preserve the constitutional guarantees.*

*"We prefer the rule followed in the Federal courts. We conceive it the duty of the courts to protect constitutional guarantees. The most effective way to protect the guarantees against unreasonable search and seizure and compulsory self-incrimination is to exclude from evidence any matter obtained by a violation of them.*

*"We believe that as long as the Constitution of this state contains the guarantees to the citizen referred to, we have no choice but to use every means at our disposal to preserve those guarantees. Since it is obvious that the exclusion of such matters from evidence is the most practical protection, we adopt that means. It is no answer to say that the rule hampers the task of the prosecuting officer. If forced to choose between convenience to the prosecutor and a deprivation of constitutional guarantees to the citizens, we in fact have no choice. Moreover, within constitutional limits, the Legislature may change the rules defining the limits of legal police action. It may well be that the Legislature will desire to reconsider Section 5173 and Section 5683 in the light of modern needs.*

"We, accordingly, are of the opinion that *State v. Chuchola, supra* [2 W.W.Harr. 133 (120 A. 212)], and *State v. Episcopo, supra* [7 W.W.Harr. 439 (184 A. 872)], were erroneously decided and overrule them. The proper rule to be applied in the criminal courts of this state is that evidence obtained by a violation of constitutional guarantees is inadmissible at the trial of the person whose guarantees have been

violated, if timely objection is made thereto. We suggest the adoption of an appropriate rule by the Court of General Sessions to cover the subject. *Cf.* Rule 41(e) of the Federal Rules of Criminal Procedure, 18 U.S.C.A.

"The conviction of the plaintiff in error is reversed." (Emphasis added.)

In view of the foregoing I would grant the writ here prayed for and discharge the petitioner from custody.

Schauer, J., concurred in the reasoning and in the conclusion stated by Justice Carter.