Filed 9/10/24  P. v. Ivy CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>    v.<br><br>DEVAUGHN LEE IVY,<br><br>      Defendant and Appellant. | C098419<br><br>(Super. Ct. No. STK-CR-FE-2011-0007262) |

In 2011, during a high-speed chase, defendant DeVaughn Lee Ivy fired a rifle multiple times at a vehicle containing a rival gang member, the gang member's girlfriend, and their infant son, injuring the child.  (*People v. Ivy* (Apr. 3, 2014, C071077) [nonpub. opn.].)[1]  In 2014, a jury found Ivy guilty of three counts of premeditated attempted

---

[1]    Over Ivy's objection, we grant the People's request to take judicial notice of the record in Ivy's direct appeal (case No. C071077), including this court's unpublished opinion.  However, we do not rely on any factual assertions therein.  (Evid. Code, § 452, subd. (d).)  .

1

murder, along with associated enhancements and other charges. In 2023, the trial court summarily denied Ivy's petition for resentencing under Penal Code section 1172.6,[2] concluding that Ivy had not made a prima facie case for relief under the statute.

Ivy contends the trial court erred in summarily denying his petition and engaged in prohibited factfinding in doing so. Ivy further argues that, assuming without conceding that the jury's verdicts have a preclusive effect on his petition, the California Supreme Court's decision in *People v. Canizales* (2019) 7 Cal.5th 591, limiting the use of the "kill zone" jury instruction — given in this case — represents a significant change in the law that warrants reexamination of the propriety of that instruction and the jury's findings of intent to kill. We conclude that any error in the kill zone instruction constitutes instructional error that, in this case, was not impacted by the amendments to sections 188 and 189, and therefore falls outside the scope of section 1172.6. We thus conclude the trial court's denial of Ivy's 1172.6 petition at the prima facie stage was appropriate and we affirm the trial court's order denying the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2011, Ivy pursued a car in which a rival gang member, Antoneyo Robinson, was fleeing with Robinson's girlfriend, B.M., and their infant son, J. Ivy fired multiple rounds from a semiautomatic rifle into the back of the car. A bullet fragment struck J. in the back of the head and lodged beneath his skin. The injury was not fatal because the bullet was slowed by its initial impact with the car.

Ivy was charged with attempted murder on the theory that he was the actual shooter acting with premeditation and deliberation. At trial, the prosecutor argued that Ivy was guilty of the premeditated and deliberated attempted murder of B.M. and J. based on what is commonly known as the kill zone theory. Pursuant to that theory, the trial

---

[2]     Undesignated statutory references are to the Penal Code.

court instructed the jury with CALCRIM Nos. 600 and 601 on attempted murder and attempted murder with deliberation and premeditation. As instructed, CALCRIM No. 600 stated:

"The defendant is charged in Count 1, 2 & 3 with attempted murder.

"To prove that the defendant is guilty of attempted murder, the People must prove that:

"1. The defendant took at least one direct but ineffective step toward killing another person;

"AND

"2. The defendant intended to kill that person.

"A direct step requires more than merely planning or preparing to commit murder or obtaining or arranging for something needed to commit murder. A direct step is one that goes beyond planning or preparation and shows that a person is putting his or her plan into action. A direct step indicates a definite and unambiguous intent to kill. It is a direct movement toward the commission of the crime after preparations are made. It is an immediate step that puts the plan in motion so that the plan would have been completed if some circumstance outside the plan had not interrupted the attempt.

"A person may intend to kill a specific victim or victims and at the same time intend to kill everyone in a particular zone of harm or 'kill zone.' In order to convict the defendant of the attempted murder of [J.] or [B.M.] the People must prove that the defendant not only intended to kill Antoneyo Robinson, but also either intended to kill [J.] or [B.M.], or intended to kill everyone within the kill zone. If you have a reasonable doubt whether the defendant intended to kill [B.M.] or [J.] or intended to kill Antoneyo Robinson by killing everyone in the kill zone, then you must find the defendant not guilty of the attempted murder of [B.M.] or [J.]."

In 2012, the jury found Ivy guilty of three counts of premeditated attempted murder, one count of shooting at an occupied vehicle, three counts of assault with a

3

firearm, and one count of causing corporal injury to a child. The jury found true various firearm and great bodily injury enhancements, including, as to the three counts of attempted murder, the allegations that Ivy personally and intentionally used and discharged a firearm during the commission of the crimes pursuant to section 12022.53, subdivisions (b) and (c). As to the attempted murder of J., the jury found true the additional allegation that Ivy intentionally and personally discharged a firearm and caused great bodily injury to J., within the meaning of section 12022.53, subdivision (d). Ivy was sentenced to an indeterminate term of 25 years to life, plus three consecutive life terms and a consecutive determinate term of 13 years four months in state prison.

A different panel of this court subsequently affirmed the judgment. (*People v. Ivy, supra*, C071077.)

In 2022, Ivy filed a petition for resentencing under former section 1170.95[3] alleging he was convicted on a now-invalid theory of attempted murder. The People filed an informal response arguing, inter alia, that Ivy was ineligible as a matter of law because the jury that found Ivy guilty was not instructed on the natural and probable consequences doctrine.

In reply, Ivy argued that, under the jury instructions given, the jury could have imputed malice to him as to B.M. and J. based solely on his participation in the attempted murder of Robinson. Specifically, Ivy asserted that the kill zone instruction read to the jury and argued by the prosecutor was defective under *People v. Canizales, supra*, 7 Cal.5th at pages 607 through 608, and allowed the jury to convict Ivy of the attempted murders of B.M. and J., when Ivy only intended to kill Robinson.

---

[3]    Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6. (Stats. 2022, ch. 58, § 10.) There were no substantive changes to the statute. Although Ivy filed his petition under former section 1170.95, we cite the current section number throughout this opinion.

The trial court conducted a hearing to determine whether Ivy had made a prima facie showing of eligibility for relief under section 1172.6. At the hearing, defense counsel argued the kill zone instruction should have emphasized to the jury that it should not convict Ivy of attempted murder of B.M. and J. unless the jury determined beyond a reasonable doubt that Ivy specifically intended to kill B.M. and J. in order to ensure Robinson's death. Counsel argued that "Under *Canizales*, the instruction given to petitioner's jury was deficient in this critical respect. The instruction failed to make the jury understand . . . the nuanced difference between intent to kill and conscious disregard for life, as it pertained to [B.M.] and [J.]."

The trial court ruled that, "Ivy had a determined, resolute intent to kill [ ] Robinson, who was in a car with the driver and a child. And [Ivy], who was the sole shooter, you know, hunted [ ] Robinson down and shot multiple times into the car. Whether — the kill zone on appeal was upheld, albeit this was before *Canizales*, but even after *Canizales*, this court finds that [Ivy] would not benefit from the new murder laws and that the record is clear that [ ] Ivy had the intent to kill anybody that was in that car. So I'm going to deny [ ] Ivy and find that he's not made a prima facie case for relief under 1172.6."

DISCUSSION

I

*Senate Bill No. 1437*

The enactment of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) (Stats. 2018, ch. 1015) altered the substantive law of murder in two areas. First, with certain exceptions, it narrowed the application of the felony-murder rule. Second, it imposed a new requirement that, except in cases of felony murder, "a principal in a crime shall act with malice aforethought" to be convicted of murder. (§ 188, subd. (a)(3).) "Malice shall not be imputed to a person based solely on his or her participation in a crime." (*Ibid.*)

With Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill 775), the Legislature expanded the scope of Senate Bill 1437 to include those convicted of attempted murder and manslaughter. (Stats. 2021, ch. 551, § 2.) Thus, section 1172.6, subdivision (a) currently provides that "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, *attempted murder under the natural and probable consequences doctrine*, or manslaughter may file a petition" for recall and resentencing if certain conditions are met. (Italics added.) These conditions are: (1) the charging document allowed prosecutors to "proceed under a theory of felony murder, murder under the natural and probable consequences doctrine[,] or [any] other theory under which malice is imputed to a person based solely on [their] participation in a crime, *or attempted murder under the natural and probable consequences doctrine*" (§ 1172.6, subd (a)(1), italics added); (2) the petitioner was convicted of murder, manslaughter, or attempted murder or accepted a plea in lieu of a trial where the petitioner could have been convicted of murder or attempted murder; and (3) the petitioner could not now be convicted of murder or attempted murder under the current versions of sections 188 and 189. (§ 1172.6, subd. (a)(2), (3).)

"We review de novo an order denying a section 1172.6 petition at the prima facie review stage." (*People v. Flores* (2023) 96 Cal.App.5th 1164, 1170; see *People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 930.) We may affirm if the trial court's order is correct on any legal theory, regardless of the court's reasoning in reaching its decision. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 145 ["On appeal we consider the correctness of the trial court's ruling *itself*, not the correctness of the trial court's *reasons* for reaching its decision"].)

Section 1172.6 requires a prima facie determination. (§ 1172.6, subd. (c).) Under the statute, the trial court must appoint the petitioner counsel if requested, receive briefing from the parties (§ 1172.6, subds. (b) & (c)), and determine whether "the

6

petitioner makes a prima facie showing that the petitioner is entitled to relief." (§ 1172.6, subd. (c).) At the prima facie stage, the court may consider the petition and "the record of conviction in determining whether that single prima facie showing is made." (*People v. Lewis* (2021) 11 Cal.5th 952, 970.) The threshold for such a showing is very low, so in reviewing the record of conviction and any appellate opinions, the trial court should take the petition's allegations as true and refrain from engaging in factfinding, weighing evidence, or exercising discretion. (*Id.* at pp. 971-972.) The "authority to make determinations without conducting an evidentiary hearing pursuant to section [1172.6], subd[ivision] (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980, disapproved on other grounds in *Lewis*, at p. 963.) But, if the record of conviction contains facts refuting the allegations in the petition and shows the petitioner was the actual killer, aided and abetted with intent to kill, or was a major participant who acted with reckless indifference to human life, the trial court may deny the petition as a matter of law without further proceedings. (§ 189, subd. (e); *Lewis*, at p. 971.)

If, after accepting the facts in the petition as true, the petitioner is entitled to relief because he or she has met the requirements of section 1172.6, subdivision (a), the trial court should issue an order to show cause unless the parties waive the hearing or the petitioner's entitlement to relief is established as a matter of law by the record. (§ 1172.6, subd. (d)(2).)

## II

### *Analysis*

Preliminarily we note that the People contend that based on the plain language of the statute, a person convicted of attempted murder is eligible for relief only if that

7

conviction was based on the natural and probable consequences doctrine or another imputed malice theory of liability, and because Ivy's jury did not receive any natural and probable consequences instructions, they claim he is not entitled to relief. Indeed, neither party disputes that Ivy was prosecuted and, in fact, convicted as the actual shooter. We acknowledge there exists authority for the proposition that, because the language pertaining to attempted murder in subdivision (a) and (a)(1) of section 1172.6 is unambiguous, the Legislature meant what it said: The statute provides resentencing relief to those convicted of attempted murder based only on the natural and probable consequences doctrine. (See *People v. Coley* (2022) 77 Cal.App.5th 539, 548; accord, *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865 ["Following the passage of Senate Bill 775 in 2022, it is now clear that defendants . . . convicted of attempted murder are potentially eligible for relief under section 1172.6 if the conviction could have been based on the natural and probable consequences doctrine"].) In *Coley*, as here, "[t]he jurors . . . were not instructed on that doctrine." (*Coley*, at p. 548.) As a result, the defendant in that case was ineligible for section 1172.6 relief based on his conviction for attempted murder. (*Coley*, at p. 548; see also *People v. Offley* (2020) 48 Cal.App.5th 588, 599 ["if the jury did not receive an instruction on the natural and probable consequences doctrine, the jury could not have convicted the defendant on that basis, and the petition should be summarily denied"]; *People v. Allen* (2023) 97 Cal.App.5th 389, 395; *People v. Harden* (2022) 81 Cal.App.5th 45, 52; *People v. Cortes* (2022) 75 Cal.App.5th 198, 205; *People v. Daniel* (2020) 57 Cal.App.5th 666, 677; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1056.)

Despite the absence of a natural and probable consequences instruction, Ivy contends that the kill zone instruction given in this case allowed the jury to convict him on a now prohibited imputed malice theory. Thus, we proceed to analyze Ivy's particular claims.

Ivy contends the trial court erred in denying his petition at the prima facie stage because the trial proceedings and, in particular, the jury's verdicts did not foreclose his eligibility for section 1172.6 relief as a matter of law. He argues that the trial court erroneously engaged in prohibited factfinding in concluding that an intent to kill Robinson necessarily established an intent to kill everybody in the car. Since case law encourages the trial court to consider the record of conviction to determine whether a petitioner makes a prima facie showing of entitlement of relief (see *People v. Lewis, supra*, 11 Cal.5th at p. 970) and Ivy has not pointed out what part of that review constituted error, we move on to address whether or not the trial court's *conclusion*, based on its review of the record, that Ivy was ineligible for relief, was proper.

In sum, we agree with the People that the record refutes Ivy's allegation that he cannot be convicted of attempted murder under the current versions of sections 188 and 189. (See § 1172.6, subd. (a).) Ivy was prosecuted and convicted on the theory he was the sole shooter; his jury did not receive instructions on the natural and probable consequences doctrine, nor on aiding and abetting another. Ivy does not dispute this. Rather, his argument focuses on the deficiency of the jury instruction regarding the kill zone theory of attempted murder. At the prima facie hearing, defense counsel made the straightforward assertion that the kill zone instruction given in this case was deficient because it allowed the jury to impute to Ivy the intent to kill B.M. and J. based on his attempt to kill Robinson. On appeal, Ivy further argues that, in light of the significant change in the law through *People v. Canizales, supra*, 7 Cal.5th 591, the kill zone instruction was defective and we should not give preclusive effect to the jury's verdicts. We conclude that Ivy's contentions based on the defects in jury instructions regarding the kill zone theory of attempted murder are not cognizable under these postjudgment proceedings.

Ivy first argues that the kill zone instruction given did not accurately convey to the jury it had to find he had the concurrent specific intent to kill all three victims in the car

9

at which he shot. This constitutes a claim of instructional error that was available to Ivy prior to any changes to the law under Senate Bill 1437 or Senate Bill 775.

By the time of Ivy's trial in 2012, California law was already clear that to be convicted under a kill zone theory of liability, it had to be proven that Ivy had the specific intent to kill not only the primary target, but everyone within that zone of harm.

Our Supreme Court first adopted a kill zone theory of liability for attempted murder in *People v. Bland* (2002) 28 Cal.4th 313. The defendant in *Bland*, along with another man, fired multiple shots into a car that contained a driver and two passengers. The driver died from a gunshot wound to his chest. Both passengers were also shot but survived. The evidence was not clear who fired the shots that hit the passengers. (*Id*. at p. 318.) A jury convicted the defendant of the first degree murder of the driver and the premeditated attempted murders of both passengers. The Court of Appeal reversed the two attempted murder convictions, finding the trial court erroneously instructed the jury on the doctrine of transferred intent. (*Ibid*.) That instruction told the jury: " 'When one attempts to kill a certain person, but by mistake or inadvertence kills a different person, the crime, if any, so committed is the same as though the person originally intended to be killed, had been killed.' (CALJIC No. 8.65)" (*Id*. at p. 319.) The *Bland* court concluded that transferred intent does not apply to attempted murder. "To be guilty of attempted murder, the defendant must intend to kill the alleged victim, not someone else. The defendant's mental state must be examined as to each alleged attempted murder victim. Someone who intends to kill only one person and attempts unsuccessfully to do so, is guilty of the attempted murder of the intended victim, but not of others." (*Id*. at p. 328.) The court went on to embrace the concurrent intent theory articulated in *Ford v. State* (Md.Ct.App. 1993) 625 A.2d 984, distinguishing between transferred intent and concurrent intent. "The *Ford* court explained that although the intent to kill a primary target does not *transfer* to a survivor, the fact the person desires to kill a particular target does not preclude finding that the person also, concurrently, intended to kill others within

10

what it termed the 'kill zone.'  The intent is concurrent . . . when the nature and scope of the attack, while directed at a primary victim, are such that we can conclude the perpetrator intended to ensure harm to the primary victim by harming everyone in that victim's vicinity." (*Bland*, at p. 329.)  The court then went on to conclude:  "[T]his case permits — virtually compels — a similar inference.  Even if the jury found that defendant primarily wanted to kill [the driver] rather than [the driver's] passengers, it could reasonably also have found a *concurrent* intent to kill those passengers when defendant and his cohort fired a flurry of bullets at the fleeing car and thereby created a kill zone.  Such a finding fully supports attempted murder convictions as to the passengers." (*Id.* at pp. 330-331.)  Finding that the jury was properly instructed on the defendant's intent as to the two passengers (noting that the challenged instruction applied to a killing, not to an attempted killing), the Supreme Court reversed the judgment of the Court of Appeal.

That this law existed at the time of Ivy's trial, gave him ample opportunity to argue that the jury instruction as drafted in this case constituted error under *Bland*.  His remedy for any alleged instructional error that affected the verdict was his appeal from the judgment of conviction.  His failure to raise the argument on direct appeal forfeited that claim (cf. *In re Dixon* (1953) 41 Cal.2d 756, 759), and the subsequent petition process created by the Legislature when it enacted Senate Bill 1437 did nothing to change the applicable law so as to resurrect an argument he had already abandoned.  (*People v. Burns* (2023) 95 Cal.App.5th 862, 867-868.)

Ivy urges us to find an equitable exception to issue preclusion and collateral estoppel because, he argues, *Canizales* represented a significant change in the law.  Yet he fails to provide us with any analysis.  While *Canizales* narrowed the availability of the kill zone instruction to circumstances wherein the defendant's attack on a primary target is such that the only reasonable inference is that the defendant intended to create a zone of harm in which he or she intended to kill everyone present within that zone in order to insure the primary target's death (*People v. Canizales, supra*, 7 Cal.5th at p. 607), we

disagree it represented a significant change in the law for purposes of applying an equitable exception to issue preclusion. We find equitable exception does not apply here.

Even if, as Ivy argues, *Canizales* represented a significant change in the law and the kill zone instruction in this case did not comport with the principles established in *Canizales*, there is another reason why he would still not be eligible for relief, because " 'the alleged error he identifies has nothing to do with the legislative changes that gave rise to section 1172.6's petition process.' " (*People v. Berry-Vierwinden, supra*, 97 Cal.App.5th at p. 933; see *People v. Burns, supra*, 95 Cal.App.5th at p. 865 ["Section 1172.6 does not create a right to a second appeal, and [the defendant] cannot use it to resurrect a claim that should have been raised in his . . . direct appeal"].)

To be eligible for relief under section 1172.6, Ivy must show he can no longer be convicted of attempted murder, "because of changes to Section 188 or 189 made effective [by Senate Bill 1437]." (§ 1172.6, subd. (a)(3).) Ivy cannot make that showing, because neither Senate Bill 1437 nor Senate Bill 775 made changes to the kill zone theory or the specific intent to kill required for attempted murder. (See *People v. Berry-Vierwinden, supra*, 97 Cal.App.5th at p. 933 [instructional error identified by the defendant had " 'nothing to do with the legislative changes to California's murder law effected by Senate Bill [ ] 1437 . . . and Senate Bill [ ] 775' "].) We agree with the reasoning of other Courts of Appeal that Senate Bill 1437 did not change the law to prohibit conviction of attempted murder on a concurrent intent theory that was already settled California law by the time of Ivy's trial. In light of such, Ivy cannot "establish that he 'could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189' " made by Senate Bill 1437. (*People v. Berry-Vierwinden, supra*, 97 Cal.App.5th at p. 936, italics omitted, citing *People v. Burns, supra*, 95 Cal.App.5th 862 & *People v. Flores, supra*, 96 Cal.App.5th 1164.)

Thus, we conclude the trial court did not err in denying Ivy's petition.

DISPOSITION

The order denying Ivy's petition under section 1172.6 is affirmed.

                  /s/
EARL, P. J.

We concur:


     /s/
DUARTE, J.


     /s/
WISEMAN, J.[*]

---

[*]    Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13