**Ronald Lee DEERE, Petitioner,**

v.

**Arthur CALDERON, Warden, (San Quentin Prison) Respondent.**

**No. CV 92–1684–GLT [TD].**

United States District Court,
C.D. California,
Southern Division.

July 28, 1995.

Diana Samuelson, Serra, Perelson, Lichter, Daar and Bustamante, San Francisco, CA, Michael Satris, Margaret J. Littlefield, Law Offices of Michael Satris, Bolinas, CA, for petitioner.

Daniel E. Lungren, Atty. Gen. of the State of California, George H. Williamson, Chief Asst. Atty. Gen., Gary W. Schons, Sr. Asst. Atty. Gen., William M. Wood, and Frederick R. Millar, Jr., Supervising Deputy Attys. Gen., San Diego, CA, for respondent.

## AMENDED ORDER FINDING THAT CERTAIN OF PETITIONER'S CLAIMS ARE PROCEDURALLY BARRED

TAYLOR, District Judge.

The court finds that, since the California Supreme Court's 1993 *Clark* decision, that court has applied the timeliness procedural bar with consistency in death penalty habeas corpus cases. Therefore, the federal court will now enforce the state court procedural bar.

### I. *BACKGROUND*

Petitioner was convicted in 1982 of three murder counts, and was sentenced to death. The judgment of death was eventually affirmed by the California Supreme Court. He filed his first state habeas corpus petition in January 1991. Respondent did not challenge the merits, but argued the petition should be dismissed because petitioner did not personally verify it and did not adequately explain the delay in filing.[1] Petitioner's reply focused only on the two procedural arguments. In June 1991 the California Supreme Court issued an order stating simply, "Petition for writ of habeas corpus DENIED."

---

1. Petitioner filed his habeas petition eight months after he filed his reply brief on appeal.

Petitioner filed a federal habeas corpus petition, but this court found it contained a number of unexhausted claims, so Petitioner filed a second state habeas petition in December 1993. Respondent again argued the state petition should be dismissed on procedural grounds because it was successive and delayed without justification. On May 25, 1994, the California Supreme Court issued its order:

The petition for writ of habeas corpus filed December 2, 1993 is DENIED as successive and untimely. (*In re Clark* (1993) 5 Cal.4th 750, 775, 783–787 [21 Cal.Rptr.2d 509, 855 P.2d 729].) In addition, claims B, E, G, H, J, O, and P are denied as issues that could have been, but were not, raised in a timely appeal from judgment. (*In re Harris,* (1993) 5 Cal.4th 813, 829 [21 Cal. Rptr.2d 373, 855 P.2d 391]; *In re Dixon,* (1953) 41 Cal.2d 756, 759 [264 P.2d 513]), and claim I is denied on the ground that it was raised and rejected on appeal. (*In re Harris,* 5 Cal.4th 813, 829 [21 Cal.Rptr.2d 373, 855 P.2d 391]; *In re Waltreus,* (1965) 62 Cal.2d 218, 225 [42 Cal.Rptr. 9, 397 P.2d 1001].) The petition is also denied in its entirety on the merits.

Respondent now asks this Court to find the claims petitioner raised in his first and second state habeas petitions are barred from review in this Court because the California Supreme Court denied both petitions on procedural grounds.[2]

## II. *DISCUSSION*

### 1. *The law concerning Procedural bars*

■ A federal court cannot review a state court judgment that is independent of federal law and adequate to support the result. *See Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 2553, 115 L.Ed.2d 640 (1991). The federal court takes this position to avoid issuing advisory opinions and to demonstrate respect for the independence of state courts. *See Michigan v. Long,* 463 U.S. 1032, 1040, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983).

■ Defining the "independent and adequate" requirement is important because of the potentially profound effect of a state finding of procedural default:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman,* 501 U.S. at 750, 111 S.Ct. at 2565.

■ An "independent and adequate" state court judgment may be substantive or procedural. *Id.* at 729, 111 S.Ct. at 2554. A petitioner's failure to comply with a state procedural rule is adequate to bar federal court review of a federal claim if the rule is strictly or regularly followed by the state court. *See, e.g., Hathorn v. Lovorn,* 457 U.S. 255, 262–63, 102 S.Ct. 2421, 2426, 72 L.Ed.2d 824 (1982); *Johnson v. Mississippi,* 486 U.S. 578, 587, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988). "Strictly or regularly followed" does not mean that the state court must apply the rule in every case where the bar is applicable; a procedural bar will be adequate if it is asserted by the state court in the vast majority of cases. *See Dugger v. Adams,* 489 U.S. 401, 410 n. 6, 109 S.Ct. 1211, 1217 n. 6, 103 L.Ed.2d 435 (1989).

■ As a corollary to the requirement of strict or regular compliance, a procedural rule will not bar federal review if it is one that the state can decide whether to assert as a matter of discretion. *See Williams v. Georgia,* 349 U.S. 375, 383, 75 S.Ct. 814, 819, 99 L.Ed. 1161 (1955) ("[a] state court may not, in the exercise of its discretion, decline to entertain a constitutional claim while passing upon kindred issues raised in the same manner"); *Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 233–234, 90 S.Ct. 400, 402–403, 24 L.Ed.2d 386 (1969) (a discretionary state procedural rule, as opposed to a jurisdictional rule, does not bar federal review); *Harmon v. Ryan,* 959 F.2d 1457, 1461 (9th Cir.1992).

---

**2.** After the court issued an initial ruling in this matter, Petitioner moved for reconsideration under Local Rule 7.16. That motion was denied, and this Amended Order is issued.

■ In addition to the requirement of strict or regular application, a procedural rule will bar federal court review only if it was firmly established at the time a petitioner violated the rule. *See Ford v. Georgia,* 498 U.S. 411, 423–424, 111 S.Ct. 850, 857, 112 L.Ed.2d 935 (1991). In other words, a petitioner must have been apprised of the rule's existence at the relevant time.

■ A state law judgment provides an independent decision ground if it is independent of federal law. *Coleman,* 501 U.S. at 729, 111 S.Ct. at 2553. A federal court will presume a state court ruling is independent of federal law unless the state ruling appears to rest primarily on federal law or appears to be interwoven with federal law. *Id.* at 734–35, 111 S.Ct. at 2556–57. Thus, when a state court rejects a claim on an independent and adequate procedural default basis, that ruling is binding on the federal court even if the state court also addresses the merits of the alternative federal claim. *See Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 1044 n. 10, 103 L.Ed.2d 308 (1989); *Fox Film Corp. v. Muller,* 296 U.S. 207, 209–10, 56 S.Ct. 183, 183–84, 80 L.Ed. 158 (1935).

### 2. *Timeliness rules in California*

■ States are free to construct rules governing timeliness for raising constitutional claims. *See, e.g., Williams v. Georgia,* 349 U.S. at 382–383, 75 S.Ct. at 819; *Ford v. Georgia,* 498 U.S. at 423, 111 S.Ct. at 857.

California has longstanding rules regulating the availability of state habeas relief for state criminal defendants. In *In re Stankewitz,* 40 Cal.3d 391, 396 n. 1, 220 Cal.Rptr. 382, 708 P.2d 1260 (1985), the California Supreme Court stated:

> In a habeas corpus proceeding, it is true, the petitioner must justify any substantial delay in seeking relief. . . . Hereafter, one who seeks extraordinary relief . . . must point to particular circumstances sufficient to justify substantial delay, as we have long required.

In 1989 the California Supreme Court adopted more specific state habeas guidelines for death penalty cases. *See* Supreme Court Policies Regarding Cases Arising From Judgments of Death, Timeliness Standards 1–1—1–3.

Standard 1–1 states:

> Appellate counsel in capital cases shall have a duty to investigate factual and legal grounds for the filing of a petition for writ of habeas corpus. . . . All petitions for writs of habeas corpus should be filed without substantial delay.

Standard 1–1.1 creates a presumption that a habeas petition is filed without substantial delay if it is filed within 90 days of the final due date for the filing of the reply brief in the automatic appeal.[3]

Standard 1–1.2 allows petitioners who file a habeas petition more than 90 days after the final due date of the reply brief to establish the absence of substantial delay by alleging, with specificity, facts showing that the petition was filed within a reasonable time after petitioner learned of the factual or legal bases for the claim.

Standard 1–1.3 permits petitioners who learned of the factual or legal bases for the claim before the date *Stankewitz* became final to establish absence of substantial delay by alleging, with specificity, facts showing that the petition was filed within a reasonable time after that date.

Standard 1–2 states:

> If a petition is filed after substantial delay, the petitioner must demonstrate good cause for the delay. A petitioner may establish good cause by showing particular circumstances sufficient to justify substantial delay.

Standard 1–3 provides:

> Any petition that fails to comply with these requirements may be denied as untimely.

### 3. *California's 1993 Clark case*

The California court gave little shape to these standards until it issued a lengthy habeas decision in *In re Clark,* 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729 (1993). *Clark,*

---

**3.** The rule originally required the habeas petition to be filed within 60 days after the final due date for the reply brief on the direct appeal. It was later amended to 90 days.

explicitly recognized the California Supreme Court had not previously applied bars to successive petitions with any kind of consistency:

> On occasion, the merits of successive petitions have been considered regardless of whether the claim was raised on appeal or in a prior petition, and without consideration of whether the claim could and should have been presented in a prior petition. [Citations omitted.] Our past decisions have thereby suggested that the rules against piecemeal presentation of claims and repetitious petitions are subject to undefined exceptions and that the court may be willing to entertain multiple collateral attacks on a judgment notwithstanding the potential for abusive writ practice.

*Clark*, 5 Cal.4th at 768, 21 Cal.Rptr.2d 509, 855 P.2d 729.

The *Clark* court noted the requirement for explaining delay in filing a habeas petition goes back at least to 1949 (*see In re Swain*, 34 Cal.2d 300, 304, 209 P.2d 793 (1949), *cert. denied*, 338 U.S. 944, 70 S.Ct. 425, 94 L.Ed. 582 (1950)).[4] *Id.* at 783, 21 Cal.Rptr.2d 509, 855 P.2d 729. The 1989 timeliness standards did not alter this requirement. *Id.* at 783–785, 21 Cal.Rptr.2d 509, 855 P.2d 729. *Clark* identified certain explanations which would *not* justify the court's consideration of a substantially delayed and/or successive habeas petition: the decision in *McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (*id.* at 775, 777, 21 Cal.Rptr.2d 509, 855 P.2d 729); a petitioner's current counsel did not represent him during earlier proceedings (*id.* at 765 n. 6, 779, 21 Cal.Rptr.2d 509, 855 P.2d 729); newly discovered evidence supporting a claim, if the claim could have and should have been discovered earlier (*id.* at 775, 21 Cal.Rptr.2d 509, 855 P.2d 729);

having received funds from the federal court to conduct an investigation (*id.* at 778 n. 15, 21 Cal.Rptr.2d 509, 855 P.2d 729); a petitioner who was represented by counsel did not recognize the legal importance of facts known to him (*id.* at 778–779, 21 Cal.Rptr.2d 509, 855 P.2d 729); a petitioner would have added the claim to the earlier petition had the court not summarily denied the petition (*id.* at 781, 21 Cal.Rptr.2d 509, 855 P.2d 729); a petitioner's direct appeal concluded before promulgation of the timeliness standards (*id.* at 782–783, 21 Cal.Rptr.2d 509, 855 P.2d 729); and a petitioner's failure to allege with specificity when he learned of the factual and legal bases for a claim (*id.* at 786, 21 Cal.Rptr.2d 509, 855 P.2d 729).

Similarly, the *Clark* court identified two possible explanations which *would* justify a ruling on the merits of a substantially delayed petition filed as promptly as reasonably possible under the circumstances: when a factual basis for a claim was unknown to the petitioner and he had no reason to believe that the claim might be made (*id.* at 775, 21 Cal.Rptr.2d 509, 855 P.2d 729); and changes in the law retroactively applicable to final judgments (*id.*). Also, ineffective assistance of prior habeas counsel can, in limited circumstances, justify a delay in raising a claim. *Id.* at 779–780, 21 Cal.Rptr.2d 509, 855 P.2d 729. Finally, *Clark* held the state court will address the merits of an unjustifiably delayed petition if the petitioner demonstrates a "fundamental miscarriage of justice."[5] *Id.* at 797, 21 Cal.Rptr.2d 509, 855 P.2d 729.

### 4. The Ninth Circuit's view of timeliness in California

After the *Clark* opinion, the Ninth Circuit had occasion to consider California's timeliness standards for state habeas petitions in

---

4. A successive petition is, by definition, a delayed petition, but first petitions can also present problems of substantial delay. *Clark*, 5 Cal.4th at 770, 21 Cal.Rptr.2d 509, 855 P.2d 729.

5. A fundamental miscarriage of justice encompasses four errors:

(1) [an] error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner; (2) that the petitioner is actually innocent of the crime or crimes of which he was convicted; (3) that the death penalty was imposed by a sentencing authority which had such a grossly misleading profile of the petitioner before it that absent the error or omission no reasonable judge or jury would have imposed a sentence or death; or (4) that the petitioner was convicted under an invalid statute.

*Id.* at 759, 21 Cal.Rptr.2d 509, 855 P.2d 729: *see also id.* at 797–798, 21 Cal.Rptr.2d 509, 855 P.2d 729.

capital cases. *See Siripongs v. Calderon,* 35 F.3d 1308 (9th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1175, 130 L.Ed.2d 1127 (1995). The California Supreme Court had denied Siripongs' second habeas petition in an order stating:

> Petition for writ of habeas corpus DE-NIED both for reasons of procedural default and on the merits. Petitioner's motion for "post trial discovery" is denied (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1261 [275 Cal.Rptr. 729, 800 P.2d 1159]).[6]

*Id.* at 1312. A federal district court declined to review the three claims raised in petitioner's second state habeas because the state court had denied the claims on the basis of a state procedural default. *Id.* at 1316–1317.

The Ninth Circuit found error in the district court's dismissal on procedural grounds for two reasons. First, the state court order did not identify the basis for the finding of procedural default. *Id.* Second, assuming the procedural default was filing a successive state habeas petition, that procedural default did not constitute an independent and adequate state ground: During the time Siripongs filed his second petition, and continuing at least until the 1993 *Clark* opinion, the California Supreme Court permitted successive petitions as a matter of discretion. *Id.* at 1318. Because a state procedural default rule must be regularly and consistently applied to bar federal review, *Siripongs* held the California Supreme Court's inconsistent application of its rules on successive petitions did not bar federal review of Siripongs' claims. *Id.*

5. *Determination whether California's timeliness standards are now being regularly and consistently applied*

██ In order to determine the applicability of the procedural bar in this case, the Court must determine whether California is now making regular and consistent application of its timeliness standards.

It might be proper to simply assume that, since *Clark,* California has correctly applied its timeliness rules, and thus look no further than the order issued by the California Supreme Court. However, with the acknowledgement by the *Clark* court that its reliance on the timeliness rules had been inconsistent, and the Ninth Circuit's *Siripongs* ruling that the California Supreme Court had been inconsistent at least up until *Clark* in its reliance on timeliness bars to deny state habeas petitions in capital cases, the practices of the California Supreme Court since *Clark* should be examined to determine whether that court has applied the bar consistently since *Clark.*

The United States Supreme Court has relied on the examination of state court cases involving a state procedural rule to assess the consistency with which the state court has applied the rule as the basis for denying a claim. *See, e.g., Williams v. Georgia,* 349 U.S. at 384–389, 75 S.Ct. at 820–822; *Dugger v. Adams,* 489 U.S. at 410, n. 6, 109 S.Ct. at 1217, n. 6; *Hathorn v. Lovorn,* 457 U.S. at 263–265, 102 S.Ct. at 2426–2428. This Court follows the same approach.

The Court has reviewed the state habeas petitions, and all responsive pleadings, in the 30 capital habeas cases decided by the California Supreme Court since the *Clark* ruling on July 23, 1993, to determine whether the California Supreme Court has begun applying its timeliness bar in a more consistent manner.[7] Only one of the 30 petitions was presumptively timely by being filed within 90 days of filing the reply brief.[8] The remaining 29 petitions, which include Deere's second petition, were filed from five months to over 10 years after the filing date of the reply brief on direct appeal. In fact, 11 of

---

**6.** The *Gonzalez* case deals with post trial discovery.

**7.** The Court takes judicial notice of the state habeas files in these 30 cases. The analysis considered finally determined cases both before and after Deere's petition to give the fullest picture available of the California Supreme Court's practice. Since California has specific death penalty case guidelines (*See* Supreme Court Poli-

cies Regarding Cases Arising From Judgments of Death, Timeliness Standards), and the issue here is whether the California Supreme Court is regularly applying its death penalty procedural rules, the analysis does not include non-capital habeas petitions.

**8.** *In re Mitchell Sims,* S031117, March 2, 1994.

the petitions were filed over 5 years after the reply brief.

Of the 29 delayed petition cases decided since *Clark,* 20 of them had petitions filed before *Clark.* In the other 9 cases, including *Deere,* the petitions were filed after *Clark,* when the petitioner would presumptively know of the standards discussed in *Clark.* The court finds these 9 cases, where the petition was filed after *Clark,* show the current application standards of the California Supreme Court.

The Court's analysis of the relevant cases is contained in the *APPENDIX* at the end of this Order.

Based upon this analysis, the Court finds that each of the denials on grounds of untimeliness in the cases where petitions were filed after *Clark* was discernable, regular, and consistent. In each instance where a claim was denied as untimely, the petitioner had offered "boilerplate" explanations for his delay of the type already rejected by the *Clark* court. On the other hand, in the majority of claims decided on the merits, untimeliness was excused because petitioner either presented a unique procedural situation, or justified his explanation that the claim was newly discovered.

Having considered carefully the briefs and orders in the post-*Clark* cases, the Court finds that, beginning with petitions filed after *Clark,* the California Supreme Court has demonstrated a regular and consistent approach to its treatment of untimely petitions.

It is not unfair or unjust to now honor the procedural bar in the face of the previous ruling of inconsistency in California. *Clark* did not change the requirements for filing state habeas petitions in California. *Clark* merely put petitioners on notice that previously established standards would be followed.

Earlier petitioners who filed late state habeas petitions may have received an unwarranted benefit either because the state court ignored the default and ruled on the merits or because the state court asserted untimeliness as a bar too inconsistently to bar federal court review. It appears that California has put an end to this practice. The state is entitled to do so. Federalism and comity mandate that this Court, in turn, respect California's right to require compliance with its procedural rules.

### 6. *Procedural bar in the present case*

Respondent asks this Court to find that the claims raised by petitioner in his first state habeas petition (decided before *Clark* ) and his second state habeas petition (decided after *Clark* ) are procedurally barred from review by this Court because the denials of those petitions rested on adequate and independent state grounds.

#### a. *The first state habeas petition*

■ The California Supreme Court's ruling on Deere's first state habeas petition is not a procedural bar to this court's review. The Ninth Circuit has long treated "postcard denials," that is, orders denying state habeas petitions without reference to any reason, as a denial on the merits. *See, e.g., Harris v. Superior Court,* 500 F.2d 1124, 1127–28 (9th Cir.1974) (*en banc* ), *cert. denied,* 420 U.S. 973, 95 S.Ct. 1394, 43 L.Ed.2d 652 (1975); *La Rue v. McCarthy,* 833 F.2d 140, 143 (9th Cir.1987), *cert. denied,* 485 U.S. 1012, 108 S.Ct. 1482, 99 L.Ed.2d 710 (1988); *Lewis v. Borg,* 879 F.2d 697, 698 (9th Cir.1989); *Hunter v. Aispuro,* 982 F.2d 344, 347–48 (9th Cir.1992), *cert. denied,* — U.S. —, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993) (continuing to treat postcard denials as denials on the merits even after *Coleman* ).

Even if this Court disregarded this line of cases, the Ninth Circuit's ruling in *Siripongs* forecloses any finding of a procedural bar in petitioner's first petition. *Siripongs* holds that the California Supreme Court's failure to cite any particular procedural rule in its order precludes a finding that a denial rests on adequate and independent state grounds. *Siripongs,* 35 F.3d at 1316–1317. In addition, *Siripongs* prevents a finding of a procedural bar because it further held that procedural bars related to timeliness were not regularly enforced by the California Supreme Court, at least until *Clark. Id.* at 1318. The order in Deere's first state habeas preceded *Clark,* and cannot serve as a bar to this Court's review.

### b. *The second state habeas petition*

■ Because the California Supreme Court has shown a consistent pattern in petitions filed after *Clark*, the Court holds that the ruling on Deere's second state habeas petition acts as a procedural bar to review of his claims 3(b), 3(c), 5, 6(a), 6(b), 6(d), 6(f), 7, 8, 9, 10, 12, 14, 16(a), 19, 21, 22, 23, 24, 26, 27, 28, and 30.

The California Supreme Court's requirement is long-standing that habeas petitions be filed timely and, if not, that the petitioner justify his substantial delay. *See Clark*, 5 Cal.4th at 783, 21 Cal.Rptr.2d 509, 855 P.2d 729 ("Our decisions have consistently required that a petitioner explain and justify any substantial delay in presenting a claim.... The Policies did not create or modify the timeliness requirements applicable to all habeas corpus petitions [with two minor exceptions]"). Therefore, the timeliness rules upon which the state court relied in denying Deere's second petition were "firmly established" at the time Deere filed his second petition. (Indeed, they were firmly established in June 1991 when petitioner filed his first state habeas petition.) The state court's failure to consistently follow its own rules does not mean the rules didn't exist. Petitioner cannot avoid application of the rule based on an expectation that the state would continue to inconsistently apply the rule.

While the Ninth Circuit found the timeliness rules to be discretionary before *Clark* because of the state's inconsistent application, (*Siripongs*, 35 F.3d at 1318), *Clark* changed that practice. The state court's adoption of a consistent practice ends the rules' discretionary nature and allows them to serve as an adequate procedural basis for denying a state habeas petition.

■ In denying petitioner's second state habeas petition, the California Supreme Court not only found the petition to be successive and untimely, but also found eight claims were additionally barred because they could have been, but were not, raised in a timely appeal from judgment. In rejecting those eight claims, the court cited *Ex parte Dixon*, 41 Cal.2d 756, 759, 264 P.2d 513

(1953) and *In re Harris*, 5 Cal.4th 813, 829, 21 Cal.Rptr.2d 373, 855 P.2d 391 (1993).

For at least the past 40 years, the rule in California has been:

[H]abeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction.

*Ex parte Dixon*, 41 Cal.2d at 759, 264 P.2d 513 (1953). The California Supreme Court recognized the continuing vitality of that rule in *In re Harris*, 5 Cal.4th at 829, 21 Cal. Rptr.2d 373, 855 P.2d 391 (1993).

Petitioner has not offered the Court any compelling justification for disregarding the state court denial of the eight claims on the additional ground that they could have and should have been raised in petitioner's direct appeal. Accordingly, the Court finds those claims barred from review on the basis of this additional procedural default.

■ Petitioner asserts that no claim involving his incompetency can be barred because a defendant who is convicted despite being incompetent to stand trial presents a fundamental jurisdictional issue, and fundamental jurisdictional issues are challengeable at any time. He also contends that seven of the claims presented in his second state habeas (G, I, J, K, L, N, and P) involve allegations that the trial court exceeded its jurisdiction, and this type of claim can never be procedurally barred. He further argues that his ineffective assistance of appellate counsel claim cannot be barred because appellate counsel represented him in his first state habeas and up until his second state habeas petition was filed.

The state court was not convinced that these claims of error are the type for which the state will disregard *Dixon* error because it raised a *Dixon* bar to each one. This Court will not second-guess the state court in its application of its own rules. In any event, even if petitioner's arguments were correct, his claims are still barred on the alternative grounds of being untimely and successive.

### 7. Significance of a regular and consistent procedural bar

The finding that the federal court will honor the state court's timeliness bar has significant implications for petitioner, the state, and the federal district courts in California. At issue is the state's right to finality in its criminal convictions and petitioner's right to vindicate perceived constitutional defects.

The state's approach, as set forth in *Clark*, protects and serves both of these rights. California provides death row inmates with an opportunity to seek habeas relief and challenge any claimed constitutional errors at trial or sentencing. In doing so, the state has established certain rules, including time limitations, for raising habeas claims.

A final decision on state habeas does not bring death penalty litigation to an end. In a typical case, a capital defendant will petition for writ of certiorari and then will start the federal habeas corpus process. Typically, new counsel is appointed to represent petitioner in federal proceedings. New counsel, with a fresh approach, will seek federal funds to investigate a myriad of possible claims to ensure that all possible claims are raised in a first federal habeas petition. Once this investigation is completed, counsel will usually assert new claims. Because federal courts cannot entertain unexhausted claims (*see Rose v. Lundy*, 455 U.S. 509, 510, 102 S.Ct. 1198, 1199, 71 L.Ed.2d 379 (1982)), the petitioner normally will then return to state court to file a state habeas petition to satisfy exhaustion, before continuing with the federal petition.[9]

By that time, the petitioner is filing in state court either a substantially delayed first state habeas petition or a substantially delayed successive petition. In either case, under established state court rules and standards the state court could deny the petition on grounds of untimeliness without reaching the merits, in furtherance of its right to obtain finality in capital case litigation. If the state court applies its rules with regularity and consistency, the federal district court would not reach the merits of claims that were not raised in a timely fashion in state court, absent exceptional circumstances.

Regular and consistent state court rule application permits the federal court to contain the scope, time and cost of federal habeas litigation. When a petitioner seeks funds to investigate potential claims during the pre-petition period, the federal district court can consider whether the authorization of funds is reasonable when weighed against the degree of likelihood that a newly-uncovered claim may be procedurally barred in both state and federal court. Before deciding whether to grant investigation funds the court can direct a petitioner to explain the reasons for not investigating and raising the "new" claims in a timely fashion. In a typical case, the court may not find legitimate justification. The federal case could then proceed more quickly because the time needed for an investigation would be substantially reduced.

The consistent application of timeliness bars to prevent piecemeal litigation and to bring needed finality in lengthy death penalty litigation is neither unduly harsh nor unjust. Capital defendants in California have two opportunities to raise claims of error in state court: automatic direct appeal and state habeas corpus. They have the benefit of appointed counsel for both proceedings, as

---

**9.** This is a typical procedural scenario based on judicial notice of the 66 federal habeas death penalty cases filed in the Central District of California since 1988. Of these 66 cases, state counsel remained on the case without the appointment of any additional new counsel in only 12 cases. The remaining 54 cases received at least one and, most times, two new counsel in federal court.

Of the 54 cases with new counsel, 34 have progressed to the point where a federal petition was filed. Thirty-three of the 34 cases have returned to state court because of unexhausted claims discovered by new federal habeas counsel, and the remaining case has a motion pending to return to state court. In addition, 11 of the 12 cases where state counsel remained as counsel in federal court have had petitions filed, and three of those cases returned to state court.

It is fair to say that the appointment of new counsel in federal court in this District will almost always be followed by a return to state court to file a substantially delayed state habeas petition. Moreover, the need to return to state court after filing a habeas petition in federal court was unaffected by the petitioner having filed one or more state habeas petitions before beginning the federal habeas process.

well as a minimum level of funding to investigate habeas claims. *See* Internal Operating Practices and Procedures of the Supreme Court of California, § XIV (2) and (4)(a) (1989); Supreme Court Policies Regarding Cases Arising From Judgments of Death, § 2–2.1 and 2–2.2 (1992). Moreover, the limitations placed on habeas are not absolute. If circumstances justify an exception, or if a fundamental miscarriage of justice will result notwithstanding the lack of an exception, otherwise barred claims may be heard in state court. Similarly, the bar to federal review for procedurally defaulted claims is not absolute. A federal court will reach the merits of a procedurally barred claim if the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice.

### 8. *Potential exceptions to the procedural bar.*

Petitioner is barred from having his procedurally defaulted claims reviewed by this Court unless he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565. Petitioner suggests he can establish both cause and prejudice and a fundamental miscarriage of justice. The Court, however, finds neither exception is available to petitioner.

#### a. *Cause and prejudice*

 In a procedural default context, cause is defined as "something *external* to the petitioner, something that cannot fairly be attributed to him. [Cause] must ordinarily turn on whether [petitioner] can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, at 753, 111 S.Ct. at 2566 (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986) (emphasis in original)).

Petitioner argues there was cause for defaulting on his claims. First, petitioner contends the factual bases for claims A, D, F, H, and S in his second state habeas were not known at the time he filed his first state habeas in large part because the state court refused to fund his investigation of those claims. Second, petitioner alleges any omissions on direct appeal or his first state habeas were a result of ineffective assistance of appellate or habeas counsel. Finally, petitioner asserts his own incompetency and inability to cooperate with counsel excuse any procedural default.

 Petitioner's arguments do not demonstrate cause for his procedural defaults. Lack of state court funding is not a ground to excuse procedural default. There is no constitutional right to state habeas proceedings, hence no constitutional right to the assistance of counsel in state habeas proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 554, 107 S.Ct. 1990, 1992, 95 L.Ed.2d 539 (1987). By extension, there exists no constitutional right to have the state fund a habeas investigation.

 The claim of counsel error is also unavailing. "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 486, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986) (construing *Engle v. Isaac*, 456 U.S. 107, 131, 102 S.Ct. 1558, 1573, 71 L.Ed.2d 783 (1982)). Even if habeas counsel's actions were below professional standards, petitioner cannot establish cause because he had no constitutional right to counsel to pursue post-conviction relief; therefore, attorney error by habeas counsel is not cause for procedural default. *See Coleman*, 501 U.S. at 752–754, 111 S.Ct. at 2566–2567; *Bonin v. Vasquez*, 999 F.2d 425, 428–430 (9th Cir.1993).

 Finally, petitioner's alleged incompetence does not establish cause. Cause requires some factor "external to the defense." A defendant's incompetence is not external.

Because petitioner has not demonstrated cause for filing a delayed and successive state habeas petition, the Court does not address the prejudice factor.

### b. *Fundamental miscarriage of justice: actual innocence*

██ Petitioner also contends that failing to consider his procedurally defaulted claims would result in a fundamental miscarriage of justice because he is actually innocent of the crimes. Petitioner does not contend he did not commit the murders. He asserts he was insane at the time of the crimes and could not form the requisite mental states necessary to convict him of first or second degree murder. These same mental problems, he argues, caused him to plead guilty despite his meritorious insanity defense.

██ "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986). This "rare" exception to the procedural bar rule is applicable only in "extraordinary" cases. *See Schlup v. Delo*, —— U.S. ——, ——, 115 S.Ct. 851, 864, 130 L.Ed.2d 808, 832 (1995). The exception is not available to petitioners whose "guilt is conceded or plain." *Id.* (citing *Kuhlmann v. Wilson*, 477 U.S. 436, 452, 106 S.Ct. 2616, 2626, 91 L.Ed.2d 364 (1986)).

Petitioner's contention is not applicable here because it fails to draw the distinction between actual innocence and *legal* innocence. "Actual innocence" is different from "legal innocence." *Smith v. Murray*, 477 U.S. 527, 537, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434 (1986). The clear example of actual innocence is where the wrong person has been convicted. *See Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 2519, 120 L.Ed.2d 269, 280–281 (1992). Stated another way, "the quintessential miscarriage of justice is the execution of a person who is entirely innocent." *Schlup*, —— U.S. at ——, 115 S.Ct. at 866, 130 L.Ed.2d at 834. An insanity defense is the opposite of actual innocence: it *concedes* the act, but interposes a bar to legal responsibility.[10]

This distinction is clear under California law. A California defendant can prevail on an insanity defense only after a finding of guilt on the charged offense. *See* California Penal Code § 1026. If a defendant pleads not guilty by reason of insanity and also enters a plea of not guilty, a bifurcated trial follows. At the first trial, the defendant is presumed sane. If the jury finds the defendant guilty, then a sanity trial follows. If a defendant pleads only not guilty by reason of insanity with no other plea, guilt is presumed, and the defendant receives only a sanity trial. In either case, guilt is a prerequisite for a successful insanity defense.

Insanity is a form of legal innocence, not embodied in the fundamental miscarriage of justice concept of "actual innocence." The prerequisite of guilt necessary for a successful insanity defense in California is incompatible with the requirement of actual innocence necessary to invoke the fundamental miscarriage of justice exception to a procedural bar.[11]

This would be a particularly difficult case for Petitioner to now assert an insanity defense. The court has reviewed the trial record, which reveals a commendable effort by the trial court, prosecutor, and defense attorney to ensure petitioner entered knowing, intelligent, and voluntary pleas. The record shows the participants were all aware of the potential for an insanity defense, and dealt with it carefully and thoroughly in order to rule it out.

In sum, the absence of a colorable claim of actual innocence and the record of petition-

---

10. This distinction is well-recognized by the U.S. Supreme Court: "[A not guilty by reason of insanity] verdict ... establishes two facts: (i) the defendant committed an act that constitutes a criminal offense, and (ii) he committed the act because of mental illness." *Foucha v. Louisiana*, 504 U.S. 71, 76, 112 S.Ct. 1780, 1783, 118 L.Ed.2d 437, 446 (1992), quoting *Jones v. United States*, 463 U.S. 354, 363, 103 S.Ct. 3043, 3049, 77 L.Ed.2d 694 (1983).

11. To hold that claimed insanity is equivalent to "actual innocence," thereby avoiding a procedural default, would obliterate the concept that the exception is "rare" and applicable only in "extraordinary" cases. Almost every capital habeas case alleges some form of mental health defense should have been presented at the trial's guilt phase. If Petitioner's argument were accepted, the procedural bar would have little meaning.

er's guilty pleas support the Court's view that no fundamental miscarriage of justice will result from enforcing the procedural default.

### III. *CONCLUSION*

For all of the reasons stated in this Order, the Court DENIES claims 3(b), 3(c), 5, 6(a), 6(b), 6(d), 6(f), 7, 8, 9, 10, 12, 14, 16(a), 19, 21, 22, 23, 24, 26, 27, 28, and 30 in petitioner's first amended petition on the basis of procedural default.

The Court still has pending before it claims 1, 2, 3(a), 4, 6(c), 6(e), 11, 13, 15, 16(b), 16(c), 16(d), 17, 18, 20, 25, and 29 in petitioner's first amended petition.

Petitioner may file a motion for an evidentiary hearing on any of the remaining claims no later than 90 days from the file date of this Order. Respondent may file an opposition no later than 45 days after the motion is filed. Petitioner may file a reply no later than 30 days after the opposition is filed.

The Court also has under submission petitioner's motion for discovery, pending a ruling on the procedural bar issue. Petitioner shall file a discovery request status report no later than 60 days from the file date of this Order informing the Court which requests are still viable after the ruling in this Order. Respondent may file a discovery opposition status report no later than 21 days after petitioner's discovery status report is filed.

The Court will take both the motion for an evidentiary hearing and the discovery requests under submission and notify the parties if a hearing is necessary.

The Court finds conditions exist for an interlocutory appeal of this Order under 28 U.S.C. section 1292(b). This Order involves a controlling question of law as to which there is substantial ground for difference of opinion, and an immediate appeal from this Order will materially advance the ultimate termination of this litigation. Moreover, there are numerous other death penalty habeas matters now pending in this and other Districts in which the issue presented here is of controlling significance.

IT IS SO ORDERED.

### *APPENDIX*

### *Analysis of Post–Clark cases for regular and consistent application of timeliness standards*

In comparing post-*Clark* cases to examine for consistency, the Court considered what variables, if any, should be used to maximize the reliability of the comparison. One possible variable—the time period during which the direct appeal was briefed relative to the date the timeliness standards were promulgated—was rejected because the *Clark* court explicitly stated that a delay would not be excused because the appeal was taken before the effective date of the timeliness standards. *Clark*, 5 Cal.4th at 782 [21 Cal.Rptr.2d 509, 855 P.2d 729]. After examining all of the cases, the Court concluded that the post-*Clark* decisions should be grouped by filing date of the state habeas petition. The Court divided the cases into two groups: those where the petition was filed before *Clark* and those where the petition was filed after *Clark*. That division best illustrates the outcome of the 29 petitions that were not presumptively timely.

It is reasonable to assume that the California Supreme Court considered *Clark* as notice to parties and counsel of its expectations. This Court, therefore, looked at the state court's treatment of habeas cases depending upon the filing date of the petition. Nine of the 29 delayed petitions, including Deere's second petition, were filed after the *Clark* decision. Of those nine petitions, the California Supreme Court denied the entirety of three petitions as untimely,[12] denied some, but not all, of the claims in four petitions as untimely,[13] and denied two petitions solely on

---

**12.** *In re Ronald Deere*, S036482, May 25, 1994; *In re Robert McClain*, S035594, October 27, 1993; *In re Robert Thompson*, S036090 [1994 WL 475368] (August 10, 1994).

**13.** *In re Stevie Fields*, S037370, October 14, 1994; *In re Robert Bloom*, S035229, October 20, 1993; *In re Russell Coleman*, S041610, December 21, 1994; *In re Kenneth Lang*, S036108, February 23, 1994.

the merits.[14]

There were two outright denials on the merits, in which the issues would not be barred in federal court:

In *Mason*, the petitioner filed his third state habeas 48 months after his reply brief. Without seeking a response from the Attorney General, the state court denied the petition on the merits, and also denied some individual claims because they had been raised previously, and denied two claims because the facts were known to Mason previously. The court made no specific mention of untimeliness. Mason had argued that he could not have raised his claims sooner because they were unknown as a result of state misconduct, ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and petitioner's reliance upon his attorneys. While Mason's arguments were typical of the types of explanations generally asserted by habeas petitioner's, Mason's situation was unique. He had chosen to forgo federal habeas review of his sentence and to go forward with his execution. Mason's attorney filed the third habeas petition shortly before Mason's scheduled execution.

In *Rowland*, the petitioner filed his first state habeas petition 21 months after his reply brief. Rowland explained that his attorney discovered a conflict of interest claim by happenstance. Rowland's appellate attorney, while working on another case, discovered that petitioner's trial attorney had represented one of the detectives who investigated Rowland's case. Counsel would not have learned of the conflict but for his work on the unrelated case. Rowland justified the late filing of two additional claims by noting that he had only recently been examined by a psychiatrist and because a juror had only recently revealed juror misconduct despite a number of earlier interviews. The state court denied the petition on the merits without seeking a response from the Attorney General.

There were seven denials in whole or in part on grounds of untimeliness. The basis was either rejection of issues deemed barred under *Clark*, or an apparent determination the claim was not newly-discovered. These cases demonstrate consistent application of the procedural bar:

In *Fields*, the petitioner filed a second state habeas over 10 years after filing his reply brief. The court denied some claims because they were untimely, denied some other claims because they had been raised and rejected previously, and denied one claim (jury misconduct) on the merits. Fields had offered a number of explanations for his delay: (1) the claims were brought soon after he learned of them; (2) he is indigent, mentally dysfunctional, and incarcerated; (3) the state court had previously denied funds to investigate after *McCleskey* was announced; (4) the first state habeas was filed well before the standards were announced; and (5) his appellate counsel was ineffective. The Attorney General filed a motion to deny the petition on procedural grounds.

In *Bloom*, the petitioner filed his third state habeas over 7 years after filing his reply brief. Bloom raised two claims: conflict of interest and incompetency to stand trial. The court denied only the incompetency claim as untimely. Bloom explained that his conflict of interest was discovered only after counsel was given access to the Jailhouse Informant Litigation Team files at the Los Angeles District Attorney's office. The Attorney General was not invited to respond.

In *Coleman*, the petitioner filed his third state habeas over 10 years after filing his reply brief. The court denied one claim on the merits only and denied the remaining two claims for unexplained delay. The court denied on the merits a jury misconduct claim where a juror, initially interviewed in 1990, did not reveal the asserted misconduct until 1994. The court denied as untimely a related jury misconduct claim where the juror involved was not interviewed initially until 1994. The court denied as untimely (petitioner should have known earlier) a claim

---

**14.** *In re David Mason*, S034527 [1993 WL 315323] (August 20, 1993); *In re Guy Rowland*, S038400, June 1, 1994.

that the trial judge had previously represented the petitioner as a public defender.

In *Lang*, the petitioner filed his third state habeas 5½ years after filing his reply brief. The court denied seven of the ten claims as untimely, as well as on the merits. The remaining three claims—unconstitutional death penalty statute, ineffective assistance of appellate counsel, and cumulative error—were denied on the merits. Lang argued that his claims were delayed due to appellate counsel's errors and newly discovered evidence. The Attorney General argued strenuously about the petition being untimely.

In *McClain*, the petitioner filed his third state habeas petition over 7 years after filing his reply brief. The court denied the only claim—juror misconduct—as untimely without asking the Attorney General to respond. McClain argued the claim was newly discovered and any failure to discover it sooner was a result of the ineffectiveness of appellate counsel.

In *Thompson*, the petitioner filed his first state habeas petition almost 8 years after his reply brief was filed. The court denied the entirety of the petition as untimely because Thompson failed to explain adequately his reasons for the substantial delay.[15] Thompson essentially argued: (1) he is an uneducated layman suffering from brain disorder and mental illness; (2) his appellate counsel was ineffective for failing to conduct any habeas investigation; and (3) his current counsel filed a habeas in a timely manner after facts were discovered. The court did not invite the Attorney General to respond.

In *Deere*, the petitioner filed his second state habeas 3½ years after filing his reply brief. The court denied the petition as successive and untimely. Deere presented a number of explanations for his delay: (1) he was incompetent during state habeas corpus proceedings; (2) trial counsel refused to cooperate with appellate counsel; (3) the California Supreme Court refused him money to investigate; (4) the California Supreme Court refused to file an amicus brief submitted with his first habeas that raised some of the claims included in his second habeas; (5) his appellate counsel was ineffective; and (6) the new claims were raised in a reasonable time after they were discovered. The Attorney General argued strenuously that the petition was untimely.

For a complete analysis, the Court also considered the 20 state habeas petitions that were filed before *Clark*, but which were decided after *Clark*. Of these petitions, the California Supreme Court denied three as entirely untimely,[16] denied three as partially untimely,[17] and denied the remaining 14 petitions either on the merits or on procedural grounds unrelated to timeliness.[18] The Court finds 11 of the 20 orders issued in the pre-*Clark* petition cases are quite clear. The remaining 9 cases are not as clear. This Court cannot determine on the basis of the pleadings and order why the state court ruled as it did in *Hunter, Miranda, Mitcham, Benson, Ghent, Caro, Edwards*, and *Douglas*. In any event, these cases with petitions before *Clark* do not show that the

---

**15.** In an unusual 14–page order, the court made procedural and/or substantive rulings on each of the numerous claims raised in the petition.

**16.** *In re Michael Jennings*, S032856, November 1, 1993; *In re Michael Hunter*, S031078, August 11, 1993; *In re Michael Bacigalupo*, S032738; October 14, 1993.

**17.** *In re Adam Miranda*, S028518, October 14, 1993; *In re Stephan Mitcham*, S029219, September 30, 1993 (only 1 of 26 claims was found to be untimely); *In re Harvey Heishman III*, S031517, August 11, 1993.

**18.** *In re Fernando Caro*, S027045, September 15, 1993; *In re David Ghent*, S031473, February 23, 1994; *In re Richard Benson*, S030686, May 12,

1994; *In re Thomas Edwards*, S030742, September 25, 1993; *In re Earl Jones*, S027729, October 6, 1993; *In re Fred Douglas*, S033463, October 14, 1993; *In re Harvey Heishman III*, S033487, August 11, 1993; *In re Darrell Rich*, S027342, June 20, 1994; *In re Robert Garceau*, S022420, September 1, 1993 (filed only 4½ months after the reply brief on direct appeal); *In re David Fierro*, S031671, February 23, 1994; *In re Mark Reilly*, S031234, October 14, 1993; *In re Charles Whitt*, S023494 [1994 WL 26355] (January 13, 1994) (neither party discussed timeliness); *In re William Noguera*, S029779, September 29, 1993; *In re Robert Diaz*, S033433, August 11, 1993.

California Supreme Court has been inconsistent in ruling on petitions filed after *Clark*.