Filed 12/31/24  P. v. Stone CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>NICHOLAS SCOTT STONE,<br><br>   Defendant and Appellant. | F087539<br><br>(Super. Ct. No. 05CM4433 )<br><br>**OPINION** |

APPEAL from an order of the Superior Court of Kings County.  Valerie R. Chrissakis, Judge.

James Bisnow, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Jesica Y. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

In 2005, during an altercation between two groups of rival gang members, defendant Nicholas Scott Stone rolled down the window in the vehicle in which he was a

passenger and shot into the opposing group, narrowly missing Joel F. (*People v. Stone* (Mar. 4, 2008, F051812) rev. granted and opn. ordered nonpub. June 25, 2008, S162675).)[1] In 2006, a jury found Stone guilty of attempted murder, along with associated enhancements and other charges. In 2023, the trial court summarily denied Stone's petition for resentencing under Penal Code section 1172.6[2], concluding that Stone had not made a prima facie case for relief under the statute.

Stone contends the trial court erred in summarily denying his petition. Stone argues that the California Supreme Court's decision in *People v. Canizales* (2019) 7 Cal.5th 591(*Canizales*), limiting the use of the "kill zone" jury instruction — given in this case — represents a significant change in the law that warrants reexamination of the propriety of that instruction and the jury's findings of intent to kill in his case below. We conclude that any error in the kill zone instruction constitutes instructional error that, in this case, was not impacted by the amendments to sections 188 and 189, and therefore falls outside the scope of section 1172.6. We thus conclude the trial court's denial of Stone's section 1172.6 petition at the prima facie stage was appropriate and we affirm the trial court's order denying the petition.

### FACTUAL AND PROCEDURAL BACKGROUND

In 2005, a group of 10 to 20 youths, some of whom were Norteño gang members, were at a street carnival when they yelled gang slurs at two Sureño youths and kicked their vehicle as the two left. A group of Sureños, including Stone, returned to the carnival in a vehicle within an hour and "mad dogged" the Norteño group that was still

---

[1]     We take judicial notice of the record in Stone's direct appeal (case No. F051812), including this court's previously published opinion. (Evid. Code, § 452.)

[2]     All further statutory references are to the Penal Code unless otherwise stated.

there. Stone was a passenger in the vehicle and, at one point, rolled down his window, pulled out a gun, and fired at the other group, missing Joel F.[3]

Stone was charged with attempted murder of Joel F. on the theory that he was the actual shooter. At trial, the prosecutor argued that Stone was guilty of the attempted murder of Joel F. based on what is commonly known as the kill zone theory. Pursuant to that theory, the trial court instructed the jury with CALCRIM No. 600 on attempted murder, which included the following modified version of the "kill zone" instruction:

> "A person may intend to kill a specific victim or victims and at the same time intend to kill anyone in a particular zone of harm or … 'kill zone,' ….

> "In order to convict the defendant of the attempted murder of Joel [F.], the People must prove either that the defendant intended to kill Joel [F.], or that he not only intended to kill another human being, but also that he intended to kill anyone within the 'kill zone,' and that Joel [F.] was in the zone of harm or 'kill zone' at the time of the shot.

> "If you have a reasonable doubt whether the defendant intended to kill Joel [F.] or intended to kill another by harming everyone in the 'kill zone,' or whether [Joel F.] was in the 'kill zone,' then you must find the defendant not guilty of the attempted murder of Joel [F.]."

A jury found Stone guilty of attempted murder and three counts of attempting to dissuade a witness. The firearm and gang enhancements were found true, including, as to the attempted murder, that Stone personally and intentionally used a firearm during the commission of the crime, pursuant to sections 12022.5, subdivision (a)(1) and 12022.53, subdivision (b). Stone was sentenced to 15 years to life, plus an indeterminate term of 10 years on the attempted murder conviction with gang and firearm enhancements, and to three consecutive seven-to-life terms on the convictions for attempting to dissuade a witness with the gang enhancement.

On direct appeal, this court reversed the attempted murder conviction and related enhancement findings, holding that the trial court erred in instructing the jury with the

---

**3**    See footnote 1.

3.

modified "kill zone" instruction. This court found the instruction defective because it allowed the jury to find the requisite specific intent based solely on the victims' presence in a particular zone of harm. The California Supreme Court granted review to determine "whether the intent must be to kill a particular person, or whether a generalized intent to kill someone, but not necessarily a specific target, is sufficient." (*People v. Stone* (2009) 46 Cal.4th 131, 136 (*Stone II*).) The California Supreme Court reversed this court's decision and remanded the matter, concluding that "a person who intends to kill can be guilty of attempted murder even if the person has no specific target in mind." (*Id.* at p. 140.) On remand, this court affirmed the judgment in its entirety.

On January 31, 2022, Stone filed a petition for resentencing under former section 1170.95[4] ostensibly alleging he was convicted on a now invalid theory of attempted murder.[5] The trial court appointed counsel and set a briefing schedule. The People filed an opposition to the petition on August 24, 2022, arguing, inter alia, that Stone was ineligible as a matter of law because the jury that found Stone guilty was not instructed on the natural and probable consequences doctrine. On October 28, 2022, counsel for Stone requested a continuance and that the trial court order the People to disclose discovery (admitted evidence and trial transcripts) to allow Stone to establish a prima facie showing.

The People filed supplemental briefing on March 8, 2023, stating that receipt of the jury trial transcripts show that the jury was not instructed on a now invalid theory of attempted murder and liability and "would have had to find that [Stone] possessed a specific intent to kill," making Stone ineligible for relief under section 1172.6.

---

[4] Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6. (Stats. 2022, ch. 58, § 10.) There were no substantive changes to the statute. Although Stone filed his petition under section 1170.95, we cite the current section number throughout this opinion.

[5] On the petition itself, it appears that Stone did not select applicable reasons for the petition, but checked all of the boxes.

The prima facie hearing was held November 30, 2023.  Counsel for Stone acknowledged that the instructions given at trial were not based on a now invalid theory, but on his "reading of the evidence, based upon the evidence that was presented, the argument would be simply at this time that [Stone] … fell under the theory anyway that would qualify under this statute."  The trial court denied the petition, finding Stone had not stated a prima facie case and was not eligible based upon the evidence of transcripts, which showed that the jury was not instructed on a now invalid theory of conviction.

Stone now appeals from the order denying his section 1172.6 petition.  We affirm.

**DISCUSSION**

*Senate Bill No. 1437*

The enactment of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) (Stats. 2018, ch. 1015, § 4) altered the substantive law of murder in two areas.  First, with certain exceptions, it narrowed the application of the felony-murder rule.  Second, it imposed a new requirement that, except in cases of felony murder, "a principal in a crime shall act with malice aforethought" to be convicted of murder.  (§ 188, subd. (a)(3).)  "Malice shall not be imputed to a person based solely on his or her participation in a crime."  (*Ibid*.)

With Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill 775), the Legislature expanded the scope of Senate Bill 1437 to include those convicted of attempted murder and manslaughter.  (Stats. 2021, ch. 551, § 2.)  Thus, section 1172.6, subdivision (a) currently provides that "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, *attempted murder under the natural and probable consequences doctrine*, or manslaughter may file a petition" for recall and resentencing if certain conditions are met.  (Italics added.)  These conditions are: (1) the charging document allowed prosecutors to "proceed under a theory of felony murder, murder under the natural and probable consequences doctrine[,]

5.

or [any] other theory under which malice is imputed to a person based solely on [their] participation in a crime, *or attempted murder under the natural and probable consequences doctrine*" (§ 1172.6, subd. (a)(1), italics added); (2) the petitioner was convicted of murder, manslaughter, or attempted murder or accepted a plea in lieu of a trial where the petitioner could have been convicted of murder or attempted murder; and (3) the petitioner could not now be convicted of murder or attempted murder under the current versions of sections 188 and 189. (§ 1172.6, subd. (a)(2), (3).)

"We review de novo an order denying a section 1172.6 petition at the prima facie review stage." (*People v. Flores* (2023) 96 Cal.App.5th 1164, 1170; see *People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 930.)

Section 1172.6 requires a prima facie determination. (§ 1172.6, subd. (c).) Under the statute, the trial court must appoint the petitioner counsel if requested, receive briefing from the parties (§ 1172.6, subds. (b) & (c)), and determine whether "the petitioner makes a prima facie showing that the petitioner is entitled to relief." (§ 1172.6, subd. (c).) At the prima facie stage, the court may consider the petition and "the record of conviction in determining whether that single prima facie showing is made." (*People v. Lewis* (2021) 11 Cal.5th 952, 970.) The threshold for such a showing is very low, so in reviewing the record of conviction and any appellate opinions, the trial court should take the petition's allegations as true and refrain from engaging in factfinding, weighing evidence, or exercising discretion. (*Id.* at pp. 971–972.) The "authority to make determinations without conducting an evidentiary hearing pursuant to section [1172.6], subd[ivision] (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980, disapproved on other grounds in *Lewis*, at p. 963.) If the petition and record in the case establish conclusively that the defendant is ineligible for

relief, the trial court may dismiss the petition. (*People v. Curiel* (2023) 15 Cal.5th 433, 450.) If the trial court determines the petitioner has met his or her prima facie burden, the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder or attempted murder conviction and to resentence the petitioner on any remaining counts. (§ 1172.6, subds. (c), (d)(1).)

*Analysis*

The relevant conviction here is for attempted murder. The elements of "[a]ttempted murder [include] the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Lee* (2003) 31 Cal.4th 613, 623.) By its plain language, section 1172.6 provides that a person convicted of attempted murder may be eligible for relief only where he or she could be or was convicted "under the natural and probable consequences doctrine." (§ 1172.6, subd. (a); see *People v. Coley* (2022) 77 Cal.App.5th 539, 548; accord, *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865 ["Following the passage of Senate Bill 775 in 2022, it is now clear that defendants ... convicted of attempted murder are potentially eligible for relief under section 1172.6 if the conviction could have been based on the natural and probable consequences doctrine"].) In *Coley*, as here, "[t]he jurors ... were not instructed on that doctrine." (*Coley*, at p. 548.) As a result, the defendant in that case was ineligible for section 1172.6 relief based on his conviction for attempted murder. (*Coley*, at p. 548; see also *People v. Offley* (2020) 48 Cal.App.5th 588, 599 ["if the jury did not receive an instruction on the natural and probable consequences doctrine, the jury could not have convicted the defendant on that basis, and the petition should be summarily denied"]; *People v. Allen* (2023) 97 Cal.App.5th 389, 395; *People v. Harden* (2022) 81 Cal.App.5th

45, 52; *People v. Cortes* (2022) 75 Cal.App.5th 198, 205; *People v. Daniel* (2020) 57 Cal.App.5th 666, 677; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1056.)[6]

As demonstrated by the jury instructions here, and conceded by Stone, the jury was not instructed on the natural and probable consequences theory, but instead was required to find defendant personally harbored the intent to kill to find him guilty of attempted murder. (See CALCRIM No. 600.)

Despite the absence of a natural and probable consequences instruction, Stone contends that the kill zone instruction given in this case allowed the jury to convict him on a now prohibited imputed malice theory. We disagree.

Stone first argues that, because the Supreme Court in *Stone II* agreed that the "kill zone" instruction given in that case did not fit Stone's case (since it did not involve multiple victims), and because it found "two problems" with the modified instruction as given (wording that a person guilty of attempted murder must have the intent to kill "everyone" within the kill zone, rather than "anyone" within that zone, and that the final sentence which referred to an intent to "harm" everyone in the zone, should instead refer to an intent to "kill" everyone in that zone), we should reverse the trial court's denial of the existence of a prima facie case with respect to his petition for resentencing and remand for the trial court to conduct an evidentiary hearing to determine whether the jury may have imputed malice to Stone. We reject Stone's arguments as to the wording he now objects to because the kill zone instruction, as given, was found by the Supreme Court not to be prejudicial. (*Stone II, supra,* 46 Cal.4th at pp. 138–141.)

We also reject Stone's argument that, in light of the significant change in the law through *Canizales, supra,* 7 Cal.5th 591, the kill zone instruction was defective and we should not give preclusive effect to the jury's verdicts. We conclude Stone's contentions

---

**6**     *Cortes*, *Daniel*, and *Soto* were all referenced by the trial court at the prima facie hearing as the basis for denying the petition.

8.

based on the defects in jury instructions regarding the kill zone theory of attempted murder are not cognizable under these postjudgment proceedings, as this claim of instructional error was available to Stone prior to any changes to the law under Senate Bill 1437 or Senate Bill 775. By the time of Stone's trial in 2006, California law was already clear that to be convicted under a kill zone theory of liability, it had to be proven that Stone had the specific intent to kill not only the primary target, but everyone within that zone of harm. (See *People v. Bland* (2002) 28 Cal.4th 313, 330–331 (*Bland*).)

That this law existed at the time of Stone's trial gave him ample opportunity to argue that the jury instruction as drafted in this case constituted error under *Bland*. His remedy for any alleged instructional error that affected the verdict was his appeal from the judgment of conviction. His failure to raise the argument on direct appeal forfeited that claim (cf. *In re Dixon* (1953) 41 Cal.2d 756, 759), and the subsequent petition process created by the Legislature when it enacted Senate Bill 1437 did nothing to change the applicable law so as to resurrect an argument he had already abandoned. (*People v. Burns* (2023) 95 Cal.App.5th 862, 867–868.)

Stone urges us to find an exception to issue preclusion and collateral estoppel because, he argues, *Canizales* represented a significant change in the law. While *Canizales* narrowed the availability of the kill zone instruction to circumstances where the defendant's attack on a primary target is such that the only reasonable inference is that the defendant intended to create a zone of fatal harm in which he or she intended to kill everyone present within that zone in order to insure the primary target's death (*Canizales, supra,* 7 Cal.5th at p. 607), we disagree it represented a significant change in the law for purposes of applying an exception to issue preclusion.

Even if, as Stone argues, *Canizales* represented a significant change in the law and the kill zone instruction in this case did not comport with the principles established in *Canizales*, he is still not be eligible for relief, because " 'the alleged error he identifies has nothing to do with the … legislative changes that gave rise to section 1172.6's

9.

petition process.' " (*People v. Berry-Vierwinden, supra,* 97 Cal.App.5th at p. 933; see *People v. Burns, supra,* 95 Cal.App.5th at p. 865 ["Section 1172.6 does not create a right to a second appeal, and [the defendant] cannot use it to resurrect a claim that should have been raised in his ... direct appeal"].)

To be eligible for relief under section 1172.6, Stone must show he can no longer be convicted of attempted murder, "because of changes to Section 188 and 189 made effective [by Senate Bill 1437]." (§ 1172.6, subd. (a)(3).) Stone cannot make that showing, because neither Senate Bill 1437 nor Senate Bill 775 made changes to the kill zone theory or the specific intent to kill required for attempted murder. As such, Stone cannot "establish that he 'could not presently be convicted of murder or attempted murder because of changes to Sections 188 or 189' " made by Senate Bill 1437. (*People v. Berry-Vierwinden, supra,* 97 Cal.App.5th at p. 936, italics omitted, citing *People v. Burns, supra,* 95 Cal.App.5th 862 & *People v. Flores, supra,* 96 Cal.App.5th 1164.)

The trial court did not err in denying Stone's petition.

### DISPOSITION

The order denying Stone's petition under section 1172.6 is affirmed.


FRANSON, Acting P. J.

WE CONCUR:


PEÑA, J.


DE SANTOS, J.

10.